No. 32.—N. H. BEAL & WIFE, plaintiffs in error, *vs*. BENNETT CRAFTON, Ex'r, &c. defendant in error.

[1.] Where a bill is filed by an executor for the purpose of executing the trusts declared by the will, the *cestui que trusts* need not be made parties.

[2.] Where a tract of land was devised by the testator, and a sale of the land made by his son, and a bond for titles executed therefor, in the life-time of the testator, by the son, as the *agent* of his father; and after his death a deed was executed to the purchaser by the son as the executor of his father and two others, styling themselves trustees: *Held*, that the devise under the will was not defeated by such sale, without showing *some authority* from the testator, in his lifetime, to his son, to make such sale as his *agent*.

[3.] As a general rule, *specific legacies* of a productive nature, bear interest from the death of the testator.

In Equity, tried before Judge ALEXANDER, in Muscogee Superior Court, May Term, 1848.

The bill in this case, was brought by the defendant in error against the plaintiffs in error, as administrator and administratrix of James Beal, deceased, and was tried upon the bill, answer, and proof.

An account, discovery and relief, was prayed of and concerning the actings and doings of Robert Beal, the intestate of the

plaintiffs in error, as an acting executor of James Beal, deceased.

Amongst the bequests contained in the last will of said James Beal, deceased, there is one to the executors, in trust for his grand-children, Elizabeth T. and Samuel B. Crafton, of divers slaves, notes of considerable amount, and the one half of a tract of land in Columbia county, on Germany's creek, whereon said Robert Beal then lived, containing five hundred acres, more or less, and fifty acres, more or less, in Richmond county, whereon testator then resided, with the improvements thereon.

Robert Beal, the intestate of the plaintiffs in error, alone qualified under the will of said James Beal, deceased, and took into his charge the trust property under said bequest ; and on the first day of January, 1838, sold the one half of said land, lying on Germany's creek, so devised in trust, for $1250.

Upon the trial, the complainant proved the acceptance of the trust by said intestate, and that he had had the property, notes, &c. in his hands, and under his administration as such executor and trustee, for several years previous to his death.

On the part of the defendants below, the deed of said Robert, to said land, was introduced and read in evidence, and it was proven that he bargained said land in the lifetime of said testator, and gave a bond for titles to be made by him, for himself, and as agent for said testator, he being then living ; but before titles were made or the purchase money paid, said testator, James Beal, died.    The executors named in the will of James Beal, were said Robert Beal, Walter Harris, and Bennett Crafton ; the said Robert Beal alone, having originally qualified, and Bennett Crafton having qualified since the death of said Robert Beal. The executor Walter Harris, never did qualify.

On the part of the defendants below, testimony was submitted, showing that said Walter Harris, being the only trustee who resided in the neighborhood of said testator, though he had not qualified as executor, attended to the business of the estate gen‧ erally, though concurrently with, and in subordination to the said Robert Beal.    It was in proof, that said Robert Beal lent Harris the sum of $1262 54½, and took his note therefor, due 1st January, 1839, with an indorsement thereon, that the money belonged to Samuel B. Crafton, one of said *cestui que trusts.*

After the testimony closed, the defendant's counsel contended :

1st. That said Walter Harris, and Samuel B. Crafton, should have been made parties to the bill, and that a decree upon the whole case made by the bill, answer and proofs, could not be rendered in their absence, and that therefore the bill ought either to be dismissed, or the cause be ordered to stand over until they should be brought before the Court.

2d. That there was evidence in the case, such as ought to be considered by the Court and jury, going to show that the devise in James Beal's will, to his executors in trust, for Samuel B. and Elizabeth T. Crafton, of one half of the tract of land on Germany's creek, in Columbia county, on which Robert Beal lived, containing five hundred acres, more or less, had been *adeemed or revoked* by the said James, before his death, by a sale of his said land, through his agent, Robert Beal, to Jesse Clark; and that therefore, the defendants ought not to be held to account for that devise.

3d. That the fact that some of the trust money had been lent by Robert Beal to Walter Harris, without other security than the promissory note of said Walter Harris, was not conclusive evidence of the said Robert's personal liability to make good the loan to the *cestui que trust;* but that if it appeared that Robert Beal, in making said loan, had acted with *ordinary care and circumspection*, he ought not to be required, personally, to account for the money so loaned, even if it had been lost.

4th. That in taking the account against the defendant, interest ought not to be calculated *continuously*, from the moment at which the trust fund, or parts of it, came into Robert Beal's hands, but that there were intervals during which it ought not to be counted; of which kind was the period of twelve months, next after the death of James Beal, twelve months next after the death of Robert Beal, and twelve months next after the marriage of Martha J. Beal to Nathan H. Beal.

The Court below charged the jury, among other things,

First, That the complainant, Bennett Crafton, as qualified executor of said James Beal, deceased, was entitled to the trust property, for the purpose of executing the trust devolved upon him by the last will of said James Beal. That the bill ought not to be dismissed, and that the cause need not be ordered to stand over until either Walton Harris or Samuel B. Crafton, the *cestui que trust*, should be brought before the Court, as parties for the

purposes of complete equity between the parties, and all persons whose rights might be involved in this proceeding.

Second, That an absolute sale, either by James Beal, the testator, or by any other person by him authorised, in his lifetime, of any portion of the bequeathed and devised property in trust, by his will, would be held to be a revocation of the will, in respect to that particular property; but that nothing was to be received as evidence of such absolute sale of land by the testator, but his deed of conveyance; and no valid authority could be given to any other person, to effect such absolute sale, but the written power of attorney, under the hand and seal of the testator, in his life-time, and that, in the absence of any such evidence as the deed of Jas. Beal, to the premises in question, or his written power of attorney, to convey under seal executed in his lifetime, and especially in the absence of any proof of recognition, by James Beal, in his life-time, of Robert Beal's bargain to sell the land, as his agent, they ought to conclude that the will in that respect, had not been revoked.

Third, That the jury ought to consider the loan of any portion of the trust fund to Harris, as on the same footing with a loan to any other person; that although said Harris was named executor and trustee in the will, yet, according to the decision of our Supreme Court already referred to, (1 *Kelly*, 322, 323,) the complainant, as the only qualified executor of James Beal, had a right to the possession of the trust fund bequeathed to Elizabeth T. and Samuel B. Crafton, and of consequence, the right to have an account of it, with the representatives of the estate of said Robert Beal, the deceased executor and trustee, without respect to whom he had loaned it in his lifetime.

Fourth, That in taking the account against the defendants, interest ought to be calculated from the time at which the trust fund, or parts of it, came to Robert Beal's hands, the intervals only excepted, during which the estates of Robert Beal, the defendant's intestate, and of James Beal, his testator, were without representation. That trustees were chargeable with simple interest as matter of course, unless satisfactory evidence was given to the jury, that with ordinary prudence and skill in the management of the fund, no interest could have been realized. That at all events, trustees were answerable to the *cestui que trust*, for all the actual earnings of the trust fund, as well as the fund itself, commissions allowed by the Statute of Georgia only excepted, and

Beal and wife *vs.* Crafton.

for no more, unless in cases of gross negligence, or where they mixed up the trust fund with their own, in business, of the profits of which they refused, in answer to a bill filed on behalf of their *cestui que trust*, to give any account.

To which charge and instructions of the Court, the defendants excepted.

JONES, BENNING & JONES, for plaintiffs in error, submitted:

I. 1. Trustees are invested with a legal estate, at least sufficient to accomplish the purposes of the trust. *Lewin on Trus.* 119, 120. *Ves. Sen. Mar.* 491. *Prince's Dig.* 246, 7

2. Such legal estate is attended with all the incidents of a legal estate, not held in trust. *e. g.* with a liability to be sold encumbered, bequeathed by the trustee, to be devolved by descent, upon his heir, or administrator—to be cast by the death of one of the joint tenants on the survivor. *Lewin on Trusts*, 123, 4, 6, 7, 8. *Do.* 104, 105. 2 *P. Wms.* 201, *Sands vs. Nugee. Lewin on Trusts*, 367. 2 *Story's Eq. sec.* 977. *Doug.* 771.

3. A testator who bequeathed certain money to his after-named executors in trust, to be invested in property, whenever they should deem it advantageous, for the use of the two grandchildren, and their children, to be distributed at their maturity or marriage, and certain land to the same persons in trust for the same uses, with the privilege of selling it, and investing the proceeds in other property, and who subjoined several limitations of both bequests, besides a power to the persons aforesaid, to appoint a trustee or agent to conduct and manage the bequest, should they or either of them decline to do so, and who afterwards named B, C, & H, for his executors.

1. Meant to give the legal estate in the thing bequeathed to B, C, & H, jointly, and absolutely, *not* upon condition of their taking the office of executors to which they had been designated.

2. Or he intended to give it to them jointly, upon condition of *their jointly* assuming that office.

3. Certainly he did not design to give it to any of the three, who might separately qualify as executors, for the *term of his life*, and at his death, to either of the *two survivors*, who might then qualify, and so after his death to the third, on his qualifying.

4. If the first was his intention, then the trust was accepted in accordance with it, by B, C and H, and the legal estate, therefore, became vested in them, *under and by virtue of the will*, for they *all* acted in execution of the trust. *Lewin on Trusts*, 116, 117, 132, 133, 135, *et seq.*

5. If the second was the intention, then the trust was never accepted by B, C and H, as they did not jointly assume the office of executors, and therefore the legal estate never became vested in any body, under and by virtue of *the will*. But it was by operation of law thrust upon him, whoever he might be, (and he turned out to be B,) who by taking the executorship acquired possession of the trust property—to the end that the trust might not fail for want of a trustee. 2 *Story's Eq. sec.* 976. 1 *Do. sec.* 98. 1 *Mad. Ch.* 457–58. *White vs. White*, 1 *Bro. C. C. Lewin on Trustees*, 290, 291 *et seq.* 3 *Meyl. & K.* 347.

6. Now B, after entering upon the office of executor, died, and therefore the legal estate is either in C & H, jointly, by *survivorship. Lewin on Trustees*, 135. *Williams vs. Russell, Hard.* 204. 5 *Ves.* 825. *Story's Eq. Pl. sec.* 211.

Or it is in the representatives of B, by *operation* of law. *Story Eq. Pl.* 211. *Lewin*, 123, *and supra.*

7. On the first alternative it is indispensable, that H should be joined with C, as a party plaintiff in order to make out a legal title to call for this account. Indeed he and the *cestui que trust* also, are necessary parties in other respects, because in equity—

8. All who have an interest in the subject of the suit, ought, if practicable, to be made parties to it, so that every interest being fairly represented, the whole subject may be safely disposed of forever, in one single decree. *Story's Eq. Pl. sec.* 72, 73, 74, 74 *a.* 76 *a.* 76 *b. Calvert on Parties*, 1 *chap.* (*cited in Story's Eq. Pl. note* 2, *to sec.* 76 *c.*) *Story's Eq. Pl. secs.* 81, 137, 138, 159, 162.

Especially is this note applicable to trustees. *Story's Eq. Pl. secs.* 207, 210. *Lewin on Trusts*, 138. And to *cestui que trust. Do.* 207, *and note* 1. 210, 211. *Cook vs. Binney*, 1 *Jacob*, 523.

9. If the second alternative be true, then the *cestui que trust* is an essential party, because in that case, no person *but him* has any right at all to call them, Beal and wife, who are his trustees, to an account. *Story's Eq. P. sec.* 211.

10. But even if the legal title is in the present complainant,

still H, and the *cestui que trust* have the same "interest in the subject of the suit," and ought to be before the Courts. *Supra.*

11. The objection of a want of parties, may generally, and must sometimes be put off to the hearing, as it often is not till then that the defect becomes apparent. *Story's Eq. Pl. secs.* 236, 6, *a.* 75.

II. 1. The Court erred in charging that *nothing* was to be received in evidence of such absolute sale of land by the testator, *but his deed* of conveyance, and that no valid authority could be given to any other person to effect such a sale, except under the hand and seal of the testator.

For the sale of land by parol, if accompanied by performance, or part performance, is good in Equity. *Story's Eq. sec.* 759.

2. And if one stands by and lets another sell his land, and does not make known his title, he is esstopped from afterwards disputing the *authority* of the seller. *Story's Eq. sec.* 385.

3. In fact, a man may verbally authorise another to sign his name and *fix his seal* to an instrument, in his immediate presence. *Story on Agency,* sec. 51.

III. 1. The Court also erred, in charging that in the absence of James Beal's written power of attorney under seal to convey, the jury ought to consider that the will had not been revoked.

For Robt. Beal might have well bargained away the land, under a *verbal* authority, and that would have been a revocation, 2 *Green. Ev. sec.* 61. *Story Agency, sec.* 50. *Emmerson vs. Heelis,* 2 *Taun.* 38. *Coles vs. Wecothick,* 9 *Ves.* 234, 249, 250. *Waddington et al. vs. Bristows et al.* 2 *Bos. & P.* 453. 1 *Sug. Ven. top,* 132, *bottom,* 187.

2. And in assuming the absence of any proof of recognition by James Beal, of Bobert Beal's bargain to sell the land, for the answer says, that James Beal *knew and approved* of the sale, and it is responsive.

IV. The Court erred in charging that interest ought to be calculated from the time at which the trust fund, or parts of it, came into Robert Beal's hands, the intervals *only* excepted, during which, the estate of James Beal, and Robert Beal were without representatives.

For " an executor will not in general be charged with interest, but from the end of a year, from the time of the testator's death." *Lewin on Trusts,* 171, 172. *Wms. on Executors,* 1132.

By our Act of '99, this time is changed, so as to commence running from the date of the probate of the will, or of the granting of letters of administration. *Prince's Dig.* 422.

2. Surely the executor should be allowed a reasonable time to find an investment, at least six months. 2 *Wend.* 87, 89. 2 *Wms. on Ex. in note,* 1134, before he should be chargeable with interest.

H. HOLT, and THOMAS & DOWNING, for defendant.

G. E. Thomas, one of the counsel for defendant in error, insisted upon the following points, and authorities :

First, That the proper parties were before the Court. See 1 *Kelly's Rep.* 422. 4 *Vol. Cond. Rep.* 402.

Secondly, That there was *no lawful sale of any part of said land left,* to the said Craftons, by James Beal, in his will, made by said James Beal in his life time, *or any legally authorised agent,* and therefore shall insist that the deed executed by said Robert Beal, as executor of said James Beal, and as trustee, and by Walter Harris and Bennett Crafton as trustee of the said Craftons, was properly made, and as the proceds of said sale *are admitted to have passed into the hands of said Robert Beal, in his life time, the plaintiffs in error or their representatives, ought to be held responsible therefor.* See *Prince's Dig.* 915. *Prince's Dig.* 212. *Prince's Dig.* 163. *See* 4*th sec. Statute of Frauds,* 29 *Charles II.* 1 *Story's Eq.* 507. 8 *Greenl.* 320.

If it was sold by *the testator,* the evidence is conclusive it was *not intended to defeat the will.* 5 *Law Lib.* 341, 583. 3 *Bur.* 1249.

Thirdly, Counsel for defendant in error will also insist that the said plaintiffs in error ought to be held responsible for *the amount loaned to Walter Harris by Robert Beal, in his life time,* because he did *not act with the same caution and prudence, that prudent men in like circumstances usually act, having loaned the money to said Harris without even requiring security for the ultimate payment thereof.* See 2 *Story Eq.* 512, 513, 514, 515, 516, 517, 518.

Fourthly, That in the computation of interest, counsel will insist that the charge of the Court was as *favorable as it possibly could be for the plaintiffs in error.* See 2 *Story Eq.* 518. 1 *John. Ch. Cases,* 620. 2 *McCord's Ch. Cases,* 214, *and* 2662. 3 *Dessau.* 241. 4 *Dassau.* 369, 463, 555.

Beal and wife *vs.* Carlton.

*By the Court.*—WARNER, J. delivering the opinion.

When this case was before us, at a previous term of this Court, we ruled that Bennett Crafton, as the qualified executor of James Beal, deceased, was entitled to the possession of the trust property, for the purpose of executing the trust devolved upon him, by the last will and testament of the testator. 1 *Kelly*, 332. It is now insisted that before a valid decree can be made, against the defendants, Walter Harris, one of the executors named in the will of James Beal, but who *never qualified as such*, and Samuel B. Crafton, one of the *cestui que trusts*, should be made parties. It does not appear from the record, that Harris is anything more than a mere *debtor* to the estate; that he borrowed a portion of the trust fund, for which he gave his note. It is true, he states, that being the only one of the executors, or trustees, who resided in the neighborhood of the deceased testator, he attended to the business of the estate, though concurrently with, and in *subordination* to, Robert Beal, the *only qualified executor* at that time. He never took upon himself the execution of the trusts, under the will. The complainant, Bennett Crafton, has qualified as executor, and has taken upon himself the execution of the trusts, declared by the testator's will.

[1]. Nor do we think, Samuel B. Crafton, one of the *cestui que trusts*, under the will, was a *necessary* party in this case. The general rule laid down by Mr. Justice Story, as to parties, is stated be, "that where any persons are made trustees for the payment of debts, and legacies, they may sustain a suit; either as plaintiffs or defendants, without bringing before the Court, the creditors or legatees for whom they are trustees, which, in many cases, would be impossible. And the rights of creditors, or legatees, for whom they are trustees, will be bound, by the decision of the Court, when fairly obtained, for or against the trustees. In such cases, the trustees, like executors, are supposed to represent the interests of all persons, creditors, or *legatees*." *Story Eq. Pleading*, 145, *sec*. 150. Here Crafton is made by the will executor and trustee. We do not pretend to say, such a case might not be made, as would make it necessary for the *cestui que trust* to be made a party for the protection of his interest.

[2.] In relation to the ademption of the land, on Germany's creek, by a sale thereof by the testator, in his life time, we think

the general proposition as stated by the Court below, is too broad ; although, as applicable to the state of facts exhibited by the record in this case, no injury was done to the plaintiff's in error.   The Court instructed the jury, "that nothing was to be received as evidence of such absolute sale of land by the testator, but his *deed of conveyance*, and no valid authority could be given to any other person, to effect such absolute sale, but the *written power of attorney, under the hand and seal of the testator*, in his lifetime." Had such a contract been proved, on the part of the testator, for the sale of the land, in his lifetime, though not proved by *deed*, under his hand and seal, as would have entitled the vendee to a *specific execution* of such contract, in a Court of Equity, we apprehend the devise under the will, would be considered as defeated by such contract.   But the facts which are relied on here, to defeat the devise under the will, are, that Robert Beal sold the land to Clark, and gave him a bond for titles in his own name for one half the land, and as *agent* for his father, the testator, for the other half.   When the money was paid by the vendee, Robert Beal took up the bond, made a title to one half, and as executor and trustee for the other half, and Walter Harris and Bennett Crafton as trustees, joined in the deed with him, for the half of the land, which he purported to convey, as executor and trustee. Now there is no evidence, either *parol or written*, that Robert Beal had any authority from his father , James Beal, to act as *his agent*, in making sale of the land, or that he ever recognized such sale in his lifetime.   The only evidence of Robert Beal's *agency*, in making sale of the land, are *his own acts*, done without the assent, knowledge, or recognition of his father, in his lifetime, so far as the record informs us.   If James Beal, the testator, made no contract, by himself or *authorised agent*, in his lifetime, for the sale of the land, the deed made by his qualified executor, and the two trustees, since his death, will not defeat his title, good at the time of his death, so as to prevent the land from passing to the *cestui que trust*, under his will.   As it regards the loan of a portion of the trust fund to Harris, we concur in the view taken by the Court below, in its charge to the jury, that they ought to consider the loan as on the same footing with a loan made to any other person.   Harris never qualified as executor, nor is there any evidence he accepted the trust under the will ; although he attended to some of the business of the estate, in the neighbor-

hood where the testator died, but concurrently with, and *subordi-nate* to, Robert Beal, the qualified executor.

[3.] With regard to the question of interest, we do not think the defendants in the Court below, have any just cause of complaint to the charge of the Court, as the same appears in the record before us.

The bequest of the Chavers and Longstreet notes, is a specific legacy, and the general rule is, that specific legacies, of a productive nature, bear interest from the death of the testator. *2 *Williams on Executors*, 876. The rule in respect to interest, as stated by the Court to the jury, was quite as *favorably* stated, for the defendants, as they had any right to expect under the law. Consequently, and for the reasons already given, in relation to the other grounds of error assigned upon the record, the judgment of the Court below must be affirmed.

*Note.—See *Graybill & Butts vs. Warren,* 4 *Ga. Sup Ct. Rep.* where the Court have examined this question fully.