CHESHIRE *et al.,* executors, *v.* KEATON.

No. 11734. MARCH 9, 1937.

*Lowrey Stone,* for plaintiffs. *A. L. Miller,* for defendant.

RUSSELL, Chief Justice. James Leslie Cheshire executed his last will and testament, naming two of his brothers as executors and as trustees thereunder. By the ninth item he gave, bequeathed, and devised to his daughter, "Duane Keaton, for and

during her natural life, what is known as the Henry Mims lot of land, . . and what is known as the Cheshire home place, . . with remainder over upon the death of the said Duane Keaton to her child or children in life at the time of her death; but if no child or children of my said daughter survive her, the said remainder estate goes to" certain named persons "share and share alike; and if either of said five last named persons are dead, then his or her share shall go to his or her next of kin." The testator provided, in the tenth item, as to the residue of his estate, that "from said property, and/or from the rents, profits, issues, and accretions thereof, said trustees are to pay to my daughter Duane Keaton a sum of money each month (no monthly payment to be less than $20 nor more than $30, the exact amount of each payment being left entirely to the judgment and discretion of said trustees) until my said daughter attains the age of thirty-five (35) years; and in the event of the death of the said Duane Keaton before she attains the age of thirty-five (35) years, then to her child or children (if any there be in life at the time of the death of said Duane Keaton) until each of her living children shall attain the age of twenty-one (21) years. Upon said Duane Keaton attaining the age of thirty-five (35) years the corpus of all the property described and referred to in this item is to be turned over to her absolutely by said trustees, together with all sums that have accrued thereon, and the trust herein created then terminated. In the event said Duane Keaton dies before attaining the age of thirty-five (35) years, and leaves a child or children surviving her, when each of the living children of said Duane Keaton has attained the age of twenty-one (21) years the corpus of all the property described and referred to in this item, together with all sums that have accrued thereon, shall be turned over to such living child or children absolutely by said trustees, and the trust herein created then terminated. In the event said Duane Keaton dies before attaining the age of thirty-five (35) years and leaves no child or children who take the corpus of the property described and referred to in this item in the manner provided herein, then upon the death of said Duane Keaton (if she leaves no child surviving her), or upon the death of the last of said Duane Keaton's children to die (if said Duane Keaton leaves a child or children surviving her, and at no time have all of her

children who are living have attained the age of twenty-one years), the corpus of all the property described and referred to in this item, together with all sums that have accrued thereon, is to be turned over to" certain named persons, "share and share alike; and if any of said last named five persons be dead, then to his or her next of kin in so far as his or her share is concerned."

The testator died on June 16, 1936, and the will was admitted to probate in solemn form in the court of ordinary of Early County on July 6, 1936. The persons named as executors duly qualified as such. They filed their petition to the superior court, praying for construction of the will, naming Mrs. Duane Cheshire Keaton as defendant. It was alleged in the petition, that, "because of the difficulty in construing said will in one particular," petitioners "ask the direction of the court;" that the ninth item of the will contains, among other things, a devise to Duane Cheshire Keaton of a life-estate in what is known as the Henry Mims lot of land and in what is known as the Cheshire home place; that the defendant contends that under this devise she obtained title to the crops grown on said farm lands in the year 1936, and that they are included in the devise; and that petitioners desire a construction of said will, and especially of the ninth item thereof, respecting the contention of Mrs. Duane Keaton as herein set out. Mrs. Keaton filed her answer and set up that item 9 of the will conveyed to her the real estate therein described unconditionally for life and without reservation of the crops growing thereon at the time of the testator's death, who died before the maturity of the crops; that the bequest in said item is a special one, and therefore should take effect at the minute of the testator's death, and it is not subject to administration by the executors of the estate, there being no debts due by the testator at the time of his death in excess of general bequests made by him; that the act of 1922, declaring growing crops to be personalty, does not impair the general law as to a specific bequest in a will, where the testator dies before the maturity of the crops, which go with the lands under the special bequest; that the act of 1922 was not intended to repeal laws of inheritance, nor did that act repeal by implication the law as to special bequests set forth in a valid will; that if the court should hold that the act of 1922 does repeal, by implication or otherwise, the general law applicable to wills and

special bequests as applied to growing crops on the lands specially bequeathed, then rent of the lands for said years would be due to the devisee, and the rent would be at least $100 per plow.

No evidence was introduced. The court adjudged as follows: "That the rents and profits of the land bequeathed to Mrs. Duane Cheshire Keaton, as described in . . the 9th item of the will, go with the lands to Mrs. Duane Cheshire Keaton. The word 'profits' herein used as referring to that part of the crops grown on the premises in the year 1936, which belonged to the deceased at the time of his death, but does not include such shares of said crops as may have belonged to any share-cropper. It includes any rent of said land for said year due by any renter." To this judgment the petitioners excepted.

"Legacies may be either general or specific. A specific legacy is one which operates on property particularly designated." Code, § 113-808. A life-estate in certain described realty devised by a testator to his daughter is a specific legacy. In *Rachels* v. *Wimbish*, 31 *Ga.* 214, it was also held: "It is well settled that a specific legacy, with its increase and emoluments, is specifically appropriated by the operation of the will for the benefit of the legatee, from the death of the testator." Also, that any form of profit accruing to the property so devised "belongs to the legatee" upon the testator's death. "The income, profit, or increase of specific legacies, as a general rule, goes with the legacy, though the time of enjoyment or of vesting may be postponed." Code, § 113-809. "The natural increase of the property shall belong to the tenant for life." § 85-605. So, as a general rule, under those sections, a specific devise of lands carries with it to the devisee the income, profit, or increase of the specific legacy, from the date of the testator's death. *Holliday* v. *Price*, 146 *Ga.* 782 (92 S. E. 533). Whatever produce accrues upon a specific legacy, as interest, rent, hire, or any other form of profit, from the death of the testator, and nothing more or less, belongs to the legatee, whether the enjoyment of the principal is postponed or not. *Graybill* v. *Warren*, 4 *Ga.* 528. This principle was followed in *Holliday* v. *Price*, supra. See also *Beal* v. *Crafton*, 5 *Ga.* 301. It is true that in *Parker* v. *Chestnutt*, 80 *Ga.* 12 (5 S. E. 289), a ruling directly in conflict with the principle laid down in the foregoing provisions of the Code and authorities cited was made.

That ruling however, was dealt with and expressly disapproved in *Holliday* v. *Price,* supra. It is a matter of common knowledge, of which this court will take notice, that the ordinary and usual crops grown on the farms of this State, such as cotton, corn, syrup-cane, and others, mature in the late summer and in the fall of the year. The month of June is the first month of what is generally termed summer. Therefore, upon the death of the testator on June 16, 1936, the ordinary and commonplace farm products growing upon his lands at that time (there being no evidence of any special produce crops, such as mature in the spring and summer) had not matured. It is true that it will be presumed that the ground had been prepared for cultivation, the crops planted and worked, before the death of the testator; but there is nothing in the case of any creditor claiming any lien thereon. Therefore, as stated by the court in *Graybill* v. *Warren,* supra, "A specific legacy is considered as separated from the general estate, and appropriated to the legatee. It is set apart in special property for him, and to the property attaches the right to its produce. It vests at the death of the testator, and interest or produce is demandable upon it, from that time."

Applying the foregoing principles, the judgment complained of was not erroneous for any reason assigned. No debts were due by the testator in excess of the general bequests contained in his will. Mrs. Keaton was entitled to the unmatured crops growing on the lands specifically devised to her, immediately upon the death of the testator on June 16, 1936, and to any profit derived therefrom from the date of his death. Neither the lands devised to Mrs. Keaton nor the produce or profit thereof were, under the facts of this case, subject to administration by the plaintiffs in this case. The title to the crops raised on these lands in 1936 did not pass to the plaintiffs as trustees under item 10 of the will. The residue of the estate of the testator was to be held by the trustees for the benefit of Mrs. Keaton until she should attain 35 years of age, when the corpus thereof, together with all sums that have accrued thereon, should be turned over to her and the trust terminated. This item provided in substance that from this residue and the income and accretions thereto there should be paid to Mrs. Keaton a certain stated monthly sum until she reached such age. The will also provided that if she died before

she became 35 years of age, the monthly sum should be paid to her child or children until each reached 21 years of age, and then the corpus should go to them, and the trust be terminated; and that if she left no children, the corpus should go to five named persons, including the trustees, share and share alike. It will be noted that the monthly sum to be paid to Mrs. Keaton or to her children under this item of the will was to be paid from the residue of testator's property "not hereinbefore specifically devised or bequeathed, and from the rents, profits, issues, and accretions thereof." Under the plain terms of the will this monthly sum was not to be derived from the income of the property specifically devised to this legatee. This case is not like *Bowdre* v. *Jones,* 34 *Ga.* 399, cited by plaintiffs, where the whole estate, including all the legacies, was charged with the support and education of the legatee. There is no merit in the contention that since the provision of the Code, § 85-1901, which was codified from the act of 1922 (Ga. L. 1922, p. 114), that all crops, matured or unmatured, are declared to be personalty, the principle here held and embodied in § 113-809 does not apply to unmatured crops at the testator's death on farm lands specifically devised by him. Nothing to the contrary was ruled in *Chatham Chemical Co.* v. *Vidalia Chemical Co.,* 163 *Ga.* 276, 279 (136 S. E. 62). Section 1456 of 69 C. J. at p. 404, has no application in this case.

*Judgment affirmed. All the Justices concur.*