CHAS. C. CLAYTON, plaintiff in error, *vs.* WARREN AKIN, ex'r of John Clayton, Sr., defendant in error.

AGNES CLAYTON, plaintiff in error, *vs.* CHAS. C. CLAYTON, defendant in error.

1. A money legacy left to the executor of a will, though expressed to be "in addition to the usual commissions obtained by law, and as a full compensation for any extra trouble he may have in executing the will," is a general legacy, and cannot, as a legacy, be exempted from abatement with other general legacies, in case of a deficiency of assets.

2. When a testator, in a single item of his will, gave to his wife $1500 00 in money, various articles of personal property, and a life-estate in a certain house and lot, and its appurtenances, with the privilege, if she so desired, to take $1000 00 in money instead of the life estate in the house and lot, and in a subsequent item distinctly declared that the "legacy" left his wife was in lieu of dower:

*Held,* That the word "legacy," in the last item, covers all the several bequests of the first, and, should she prefer the $1000 00 in lieu of the life-estate, and elect to take her "legacy" in lieu of dower, she takes *all the several* bequests in her character as doweress.

3. When a legacy left to a wife is expressed to be in lieu of dower, and she elects to take the "legacy," she takes it as a *quasi* purchaser, and in a contest between her and other legatees, whether general or specific, she cannot be called upon to abate with them, to make up a deficiency of assets.

4. A legacy in Georgia may be adeemed, by the delivery of the property to the legatee, during the life-time of the testator, and if it be so adeemed, it does not pass under the will, and is not subject to abate on a deficiency of assets.

5. Whether a legacy has been in fact adeemed, is a question of fact to be left to a jury, under the evidence in the particular case. The "delivery" to the legatee must be of such a character as to show that it was the intent of the testator to part at that time irrevocably with his dominion over the property.

Clayton *vs.* Aikin, ex'r.

Bill for direction. Order of distribution. Ademption. Decided by Judge POPE. Bartow Superior Court. October Term, 1868.

John Clayton, Sr., of Bartow county, Georgia, made a will containing the following bequests :

" ITEM 3d. I give and bequeath unto my wife, Agnes Clayton, absolutely, three negroes, to-wit : (naming them,) and $1,500 00 in money, to draw interest from the time of my death. I also give to her, my said wife, the house, kitchen, smoke-house, hen-house, garden, orchard, and the land the orchard is on, and enough land for turnip and potato patches, where I now reside, and fire-wood from off my land near Alatoona, for and during her naturnal life, and at her death, said houses and out-houses, garden, orchard, and the land the garden, houses and patches are on, to be sold, and the money to be equally divided between John Clayton and James K. Polk Clayton, two sons of a nephew of mine. But if my said wife should desire not to reside at said house, and leave the same, or should relinquish her rights to the same for life, then I give and bequath to her, absolutely, the sum of $1,000 00, to be paid out of my estate. I also give and bequeath to my said wife, such part or parts of my household and kitchen furniture as she may desire and select for her own use, and should my wife leave said dwelling-house and other houses herein-before given her for life, with the garden, orchard, and patches mentioned, or relinquish her life-estate in the same, then said house, garden, etc., may be sold at any time, and must be sold with the farm lying near Alatoona, and connected with the said houses, if the houses, garden, etc., are left or relinquished in time to be sold with the land.

" ITEM 4. I give and bequeath unto Charles Collier Clayton, a son of my nephew, the plantation lying on Alatoona creek, in the county of Cobb, in said State, which plantation I purchased from William and James McEver, also the following slaves, (naming twelve slaves,) also one horse, one mule, six cows, one wagon, and the plantation-tools now on

said plantation, or that may be on it at the time of my death. (This item also gave to him two other old slaves, with request that he take care of them.)"

(ITEM 5 was a bequest of two slaves to one Letty Crow.)

"ITEM 6. All my plantation and land lying near Alatoona, in Bartow county, (except as before provided,) and all the remainder of the negro slaves, and all my other horses, mules, cows, hogs, plantation-tools, wagons, carts, household and kitchen furniture, (except as before bequeathed,) and all other property I have or may have at the time of my death, I wish sold by my executor, at public out-cry, either for cash or for credit, and either with or without an order of the Court of Ordinary, as my executor may think best, and the money arising from the sale of the land, after paying the expenses of selling, commissions, etc., to be equally divided between the said John Clayton and James K. Polk Clayton, share and share alike, and the money arising from the sale of the last mentioned negroes, and all other property, and all money collected that may be due and owing to me at the time of my death, or that I may have on hand at the time of my death, after paying the specific legacies and necessary expenses of administration, and all that may arise from sale of any other property I may own at the time of my death, either real, personal or mixed, I give and bequeath unto the children of my deceased sister, Elizabeth Logan, who died in the State of Alabama, and to the children of my deceased brother, Charles C. Clayton, who died in the State of Mississippi, share and share alike, each child to have an equal share, and if any of my said nieces or nephews should now be dead, or should be dead at the time of my death, leaving a child or children living, then said child or children are to take and receive the share his or their mother or father would have received, if living. "Item 7th. The legacy herein given to said wife is intended to be in *lieu* of any dower in and to any real estate or land I may own at the time of my death."

(Item 8th gave everything which he might acquire, and which was not disposed of by said will, to said nephews and nieces mentioned in the 6th item.) "Item 9th. I hereby

nominate and appoint Warren Akin sole executor of this my will, and in addition to the usual commissions at law, I give and bequeath to him one thousand dollars as a full compensation for any extra trouble he may have in executing this my will, and he is in no event chargable for interest on money he may have in hand, unless he refuses or fails to pay it over to the person entitled thereto, when he is legally and properly called on for it by the person so entitled to it."

In September, 1862, when this will was made, John Clayton, Sr., owned much personal property, which was afterwards lost or destroyed by the war. He died on or about the sixth day of November, 1864. Akin proved the will and qualified as the executor. Agnes Clayton, the wife of testator, relinquished all her rights to the life-estate given to her by the 3d item of said will, and selected and received the furniture given her in said will, and elected to take her legacies, and relinquish her right of dower. James K. Polk Clayton died on the 11th of August, 1864, and Charles Collier Clayton became his administrator. Akin sold all the personalty, except promissory notes and other evidences of debt, had rented out the land mentioned in said 6th item, and the houses on the land at Alatoona, and offered to sell some corn which was made in 1865, by the tenants, as rent-corn, on the land mentioned in said 4th item, as given to Charles Collier Clayton, and offered to rent out said land for 1866, but Charles Collier Clayton claimed the corn and the land, though he had no title to the land, except as such legacy, and to that the executor had not assented.

To pay Agnes Clayton said $2,500 00 and interest, and said $1,000 00 to Akin, for extra trouble in executing said will, the demands against the estate, if all of them are established, and all the expenses of executing said will, will require over $5,000 00; and all the personal effects and assets of said estate, debts due and demands, the rents of the Alatoona lands and houses for 1866, and the estate, except the lands devised to Charles Collier Clayton in said 4th item, and the land required to be sold and its proceeds to be divided between John Clayton, Jr. and James K. Polk Clayton, as

mentioned in said 6th item, will not amount to more than about $2,000 00. Therefore, it is absolutely necessary to resort to the lands mentioned in said 4th and 6th items of the will, to pay the expenses of the administration, the debts of the estate, and to pay Agnes Clayton $2,500 00 and interest; and if the legacies mentioned in said 4th and 6th items are specific legacies, then they must abate, in order to make such payments. The value of said rent-corn and the rental of said land, (worth say $500 00,) ought also to be applied to the payment of said debts, etc. Said bequests to Agnes Clayton having been taken by her in lieu of dower, should not abate. Charles Collier Clayton claims that the land bequeathed to him in said 4th item, and the corn made thereon since the death of testator, belongs to himself, and that neither is subject to the payment of the expenses of administration or said debts, until the land mentioned in said 6th item and the residue of the estate is first exhausted.

With an averment of the foregoing facts and views as to the law applicable to them, Akin, as executor of said John Clayton, Sr., filed his bill for direction against said Agnes, said John Clayton, Jr. and Charles Collier Clayton, individually, and as administrator of said James K. Polk Clayton, praying the judgment of the Court upon the following questions:

1st. Has the legacy of James K. Polk Clayton lapsed? And if so, how shall it be disposed of?

2d. Is the legacy to John Clayton, Jr., and to James K. Polk Clayton, in said 6th item, a special legacy, and does it stand on the same footing with the legacy to Charles Collier Clayton, and must each be abated, *pro rata*, to pay the debts of the estate, the expenses of administration, and the bequests to Agnes Clayton?

3d. Is Agnes Clayton's an ordinary specific legacy, and must it be abated, *pro rata*, with other specific legacies?

4th. Is not the corn, grown on the land devised to Charles Collier Clayton, in 1865, and for the rent of the land, for 1866, subject to the payment of said debts and expenses?

He prayed for general relief, for a specific decree against

Clayton *vs.* Aikin, ex'r.

Charles Collier Clayton for the value of said corn, and that said defendants should answer touching said averments.

The main facts of the bill were not denied. But John Collier Clayton answered that he went into possession of the farm bequeathed to him by said 4th item, under the following agreement, viz: In the spring of 1863, testator told him that he had given to him that farm, which was then in possession of a tenant under a lease; that testator said, "I give you possession of it at once, you paying said tenant a reasonable price for the balance of the term for which he had leased the farm;" that he then paid the tenant $600 00 for said unexpired term, and went at once into possession under said agreement, and had ever since so remained in possession thereof by himself or tenants, and he claimed it and the corn, as averred in the bill. He contended that that legacy was adeemed.

Agnes Clayton also answered the bill, admitting the averments, and that Akin, as executor, had paid her $300 00, her year's support, and $600 00 of her money legacy, but she contended that her legacy, being in lieu of a relinquished dower, should not abate.

On the trial a witness testified, that soon after John Clayton, Sr., made his will, he requested the witness to tell Charles Collier Clayton that he had given him said farm; that the witness did tell him so, and Charles Collier Clayton bought out the tenant, paying him several hundred dollars, and took possession, which was approved of by the testator, and the testator ever afterward spoke of it as the property of Charles Collier Clayton.

WARREN AKIN testified, giving a detailed statement of judgments held by him in favor of testator, stating that he had notice of many claims against the estate, some of which were in judgment; that he hoped to get rid of some of these claims, but that if they all had to be paid, it would be impossible for the personal assets to pay the debts and Agnes Clayton's year's support, $300 00, and her legacy of $2500 00, and the $1000 00 due to himself, and the other expenses of administration, even though he might collect all the judg-

ments in favor of the testator, and use one-half of the proceeds of the land devised to John Clayton, Jr., and James K. Polk Clayton. He explained the probabilities of collecting and of having to pay the claims *pro* and *con*, showing that the payment of the debts, without a resort to the legacies, was at least doubtful. He also testified that when he sold certain land of testator, he did it when there was a great demand for land, and after extensive advertisement.

As to Charles Collier Clayton, AKIN testified, that he knew he ought not to take that land, if he could avoid it, because he knew that Charles Collier Clayton was testator's favorite, and that testator wished him to have the land. As to his own claim, he testified that testator applied to him during Court to write his will, and wished him to act as executor; that he declined saying to testator that in his (Akin's) opinion, as a general rule, executors who acted honestly and fairly were not paid for their services, and for that reason, he had never been an executor, administrator, or guardian, and would not voluntarily place himself in a position where he might be tempted to do wrong, in order to get compensation for his services ; after some conversation, testator proposed to give him $1,000 00, besides the regular commissions, as a compensation for all labor and trouble which he might have in executing the will; to this, Akin agreed, wrote the will, read it over to the testator and the witnesses, and it was executed. He said he would not have consented to act as executor, nor have qualified as such, but for said $1,000 00 ; that he had already attended to a claim case for the estate; had filed the bill in this case, and had never employed any counsel for the estate, except that he had retained Judge Walker at this trial, and had put some notes out for collection, when he could not attend to them in person. On the trial, Charles Collier Clayton offered to testify as to said gift of the farm to himself, but the Court held him incompetent. He also offered to show, as a witness, that Akin had sold certain land of the estate, when it was unnecessary, and for less than it was worth, and the Court held that that was irrelevant. He offered to show that the debts due to the estate were

Clayton *vs.* Aikin, ex'r.

largely in excess of those due by it.    The Court rejected said testimony.    After argument had, the Court instructed the jury how to find, and they accordingly found a verdict, and there was a decree as follows :

" 1st. That the $1,000 00 to Aikin was a part of the expenses of administration, (but that this finding was not to include creditors, not parties to this bill, as to that $1,000 00).

2d. That the $1,000 00 due Agnes Clayton, in lieu of dower, is a debt of the highest dignity, and with the $300 00 allowed her as her year's support, should be paid before any other debt or legacy, (the $900 00 already paid to her of course to be deducted).

3d. The $1,500 00 willed to her is a general money legacy, and should not be paid till all the specific legacies are satisfied.

4th. That the proceeds of the land near Alatoona, where testator lived and died, was a specific legacy to James K. Polk Clayton and John Clayton, but that, inasmuch as Jas. K. Polk Clayton died without issue, before testator died, said legacy lapsed, and was assets in the hands of the executor, and should be paid to the widow on account of the $1,300 00 due her, with interest, less said $900 00.

5th. That, after paying the widow, the next payment should be the expenses of administration, including the $1,000 00 to Aikin, and then the other debts due from said estate should be paid.

6th. To make these payments, that the *residuum* of the estate, including said lapsed legacy, be first used, and if that was insufficient, then the general legacies, say said $1,500 00 of the widow, and if that was not sufficient, then said legacies to John Clayton, Jr., and Charles Collier Clayton, *pro rata,* and that the cost of this proceeding be paid as part of the expenses of administration.

7th. That Charles Collier Clayton has no title to said farm, except that derived from the will, and none by the pretended gift, and that he pay $575 00, and interest, for rent of the farm for 1865 and 1866, and this to be taken, if

necessary, to pay the debts, before resorting to said farm itself, or to the specific legacy of John Clayton, Jr.

The verdict was signed by one who was not of the jury which tried the cause. This happened in this way: There being no fact in dispute, the argument was had as to the law of the cause, and when the Judge pronounced his opinions, time was given to draw up the decree, and when it was ready, the Judge instructed the acting foreman of the jury, then in the box, to sign the verdict, the Court understanding that the counsel all consented thereto.

Charles Collier Clayton assigns that said decree is erroneous, because the verdict was so signed; because of the 1st and 5th items of the decree, classing Akin's $1,000 00 as expenses of administration; the finding that the land on Alatoona Creek, belonging to Charles Collier Clayton, is a specific legacy, and subject to the said debts, and liable to abatement *pro rata* with other specific legacies, and all of said 7th item of the decree; and the refusal to let him testify or to show that Akin sold said land unnecessarily and for too little, and that the debts due to the estate were in excess of those due by it, were all erroneous.

Agnes Clayton assigned as error the finding that her $1,500 00 was a general money legacy, and not to be paid till after the debts and specific legacies were satisfied; that the devise of the Alatoona land to Charles Collier Clayton to the land to John Clayton, Jr., were specific legacies, and to be enjoyed in preference to her said provisions in lieu of dower.

Thus were made the foregoing two cases, which below and here were treated as one.

W. T. WOFFORD and L. E. BLECKLEY, for Chas. C. Clayton, said, "legacy" will be made to embrace realty to carry out testator's intention, 2 Bou. Dic., 17; 5 T. R., 716; 1 Burr R., 268; 7 Vesey R., 522; 2 Caines R., 345. "Property" includes realty and personalty. Code, sec. 5; and a specific legacy is one operating on designated property. Code, sec. 2422. Delivery of the property adeems. Code, sec. 2427;

Bou. Dic., 69; 19 *Geo. R.*, 316; 2 W. and T.'s Leading Cases, part 1st, page 455, *et seq.* Akin's $1,000 00 bequest is a general legacy. Code, sec. 2431. A gift is good by delivery without a deed. 11 *Geo. R.*, 177. Every devise is in the nature of a conveyance. 2 Atkins R., 437; 35 *Ga. R.* Contract to convey by will, after consideration passed, enforced. 23d *Ga. R.*, 431. As to specific performance, see Code, sec. 3131–3. How buying out the tenant affected Clayton's title. See 1 Story's Eq. Juris, sec. 761, 762, 763. A gratuity not always a benefit. 3 Kelly,_(*Ga. R.*,) 480–1. Consideration may consist in injury. Code, sec. 2698. No exception to the rule that specific legacies take before general ones. Code, sec. 2431, 2495. Akin's $1,000 00 is a general legacy, and liable to abate. 2 Wms. on Ex'rs., 978; 1 Redfield on Wills, sec. 56, par. 12; 2 Vern, 434; 2 P. Wms., 23; 2 Atk., 171; 4 Bro. C. C., 349. It is general legacies which abate in favor of the widow. 2 Wms. on Ex'rs., 976; 1 Redfield on Wills, sec. 56, par. 10; 1 P. Wms., 126; 2 Ves. Senr., 420; Ambler, 244; 14 Sim., 258. This is not a case for election by C. C. Clayton. 9 *Ga. R.*, 278; 31 do., 225; Code, sec. 3104–5–7.

W. AKIN and D. A. WALKER, for Akin and the widow, said, "ademption" was not applicable to realty. Wms. on Ex'rs., 1145,; note P. Redfield on L. of Wills, 539; Roper on Legacies, 380; Code, sec. 2440; Statute of Frauds, sec 6. "Ademption" not applicable to C. C. Clayton, because he was not testator's child, nor stood in the place of a child. 2 Story's Eq., secs. 1116, 1117, 1118. The $1,000 00 to Akin is part of the expense of administration. Code, sec. 2552; Wms. on Ex'rs., 905, 1169–70–80–81, 1576–78–79–80–81–82. The evidence offered as to the sale and *quantum* of personal assets was irrelevant. Redfield, 549, 551; 6 Paige R, 277–298; 6 Metcalf R., 50; Ambler, 244; 7 John Ch. R., 262. "Legacy" generally applied to personalty only. Bou. Dic. Legacy; 2 Roper, 1486; 2 Wms. on Ex., 993. The intention must be looked to. Code, sec. 2420, 1754, part 2d. Taking in lieu of dower, she is a purchaser.

Clayton *vs.* Aikin, ex'r.

2 Scribner on Dower, 496, sec. 59, chap. 17; 1 W. & T.'s L. Cases, 320, (edition of 1852); 1st Roper, 431 to 433; 2 Wms. Ex'rs., 1169, 1175; 9 Watts, 265; 2 Redfield on Wills, 749; 1 P. Wms., 126; 2 Ves. Sr., 420 to 422; Ib., 417–418; Jarman on W., 404–408, etc.

McCay, J.

1. The legacy of $1,000 00 to the executor is, in every aspect of it, a general legacy; and as to abatement, in case of a deficiency of assets, must take its fate as such. It has been argued that the terms of the bequest are such that the legatee, in this case, is not a volunteer, but stands upon the footing of a purchaser. The authorities are abundant against this position. 2 Williams Ex., 1171; Fretwell vs. Stacy, 4 Vesey, 434; Attorney General vs. Robins, 2 P. W., 23; Herron vs. Herron, 2 Atk. 171. In all these cases the legacy was for "the care and pains" of the executor, language which is, in effect, the same as is used by Mr. Clayton. It will be observed that this is not a question whether the legacy is a good one, or whether it is dependent on the executor acting, but whether it is a legacy which may be called upon to abate, with other general legacies, on a deficiency of assets. The distinction adopted in the cases is, that to constitute a legatee a purchaser, he must have had a *subsisting right* at the death of the testator. He must have given up something *due*, some right actually in existence as a legal claim, at the time the will took effect. The widow's dower and a debt due from the testator to the legatee, are examples. Here is no debt. At the death, there was even no claim. It was at the option of the executor to act or not. Had this been a contract, binding upon both parties, made during the life of the testator, it might come within the rules; but, obviously, both the testator and the executor were unbound. The former might, at his pleasure, have made a new will, and the latter have refused to qualify. Nor is there any harm done. The executor acts with his eyes open. He has time to examine into the *status* of the estate before he qualifies, and he may easily

know whether he will get the legacy in full.   As a legacy, therefore, this must be considered a general legacy, liable, if necessary, to abate as such.   The Court, in this case, seems to have considered this $1,000 00 as part of the expenses of administration.   It is either a legacy or nothing.   If the executor, in this case, gets a thousand dollars, is it not that much more than the law will allow?   It is, then, a bounty of the testator—a legacy—and the only question is, is he a purchaser or not?   Suppose he fails to qualify, has he any claims against the estate?   Has he given up anything to take this?   The expenses of administration are fixed by law. Such as the law allows he is entitled to.   Here is a fixed sum of $1,000 00, given as a legacy.   We are not able to see the force of the argument which gives this the dignity of expenses.   It is a legacy, and nothing more, nothing less, given for good reasons and with good purposes, and standing upon the footing of other legacies, given for considerations and motives not amounting to a legal obligation, as past kindnesses, affection, moral obligations, etc.

2. The testator gives to Mrs. Clayton $1,500 00, in money, and various articles of personal property, and a life-estate in certain realty, with the privilege of taking $1,000 00, in lieu of the life-estate.   All this in one item of the will.   In a distinct item, he declares that the "legacy" to his wife, is in lieu of dower.   It seems to us conclusive, that by the word "legacy," he meant all that he had given her in the former item.   The life-estate in the house and lot is not, perhaps, technically, a legacy, but the liberty to choose, in lieu of it, $1,000 00, clears up even that difficulty.   We are of opinion, therefore, that the entire bequest, in item third, constitutes the "legacy," which was given her in lieu of dower.   She has, first, her option to take her dower or resort to item third of the will.   When she has done this, she may, at her pleasure, take the life-estate in the house and lot, or $1,000 00, as part of her legacy.

3. Nothing is better settled than that the wife is a purchaser of a legacy, which she chooses, under a will in lieu of her dower.

At the death of the testator, she has a legal *right* to her dower. It overtops all legacies, specific as well as general. It is a right superior even to the claims of creditors, and when she accepts the offer of exchange, tendered her in the will, and gives up her dower, she pays a valuable consideration for the portion which she accepts ; 1 Roper on Legacies, 432; Burredge vs. Brodyell, 1 P. Wm., 126; Blaner vs. Merett, 2 Ves., Sr., 420; Darenhill vs. Flecher, Ambler, 244; Norcott vs. Gordon, 14 Simmons, 258 ; Isenhart vs. Brown, 1 Ed. Chan. R. 441; Locock vs. Clarkson, 2 De Saussure, 476 ; Heath vs. Dendy, 1 Russ., 543 ; Williamson vs. Williamson, 6 Paige, 298. The cases in Ambler, 244; 2 Ves., Sr., 420; and 1 Russ., 543, even go so far as to hold that this exemption from abatement, in case of a legacy, though general, in lieu of dower, in case of a deficiency of assets to pay debts and specific legacies, exists, though the legacy be of greater value than the dower. How far this may be true, as against creditors, there seems to be no decision. Perhaps, in such a case, the amount of the excess might be of moment. That this exemption from abatement is good even as to creditors, does not appear to have been expressly settled. When it is a *bona fide* option, the principle would seem to go even to this extent.. If it is a purchase, the rceditors are not injured, since, in lieu of the legacy, the widow has thrown into the fund, out of which they are to be satisfied, her dower. The point, however, is not distinctly made in this case, and we do not settle it.

4. It is very plain that, if, at the death of the testator, he was *not the owner* of the farm on Alatoona creek, in Cobb county, given in the fourth item of the will to Charles C. Clayton, that legacy was adeemed. If he had sold it to some third person, or given it away in any binding manner, it would not have passed under the will. The legacy would have been adeemed; destroyed, is perhaps the most appropriate word. It would not have existed as the property of the testator, and could not, therefore, pass by his will.

Our statute is as follows : " A legacy is adeemed or *destroyed* wholly, or in part, whenever the testator, after making his

will, during his life, *delivers* over the *property* or pays the money bequeathed to the legatee, either expressly or by implication, in lieu of the legacy, or when the testator conveys to another the specific property, and does not afterwards become possessed of it, or otherwise places it out of the power of the executor to deliver over the legacy." Code, section 2427. Evidently, the point of this section is, that if the property, at the death, does not belong to the testator, then the legacy is *destroyed.* Now, it can make no difference who is the owner, if it has ceased to be the property of the testator. If he has delivered it over to the legatee in such a manner as to divest himself of the power to dispose of it before his death, then the legacy, as such, is destroyed. It does not pass under the will, for the simple reason that it has passed before the death. It is not, therefore, a legacy at all, and cannot be abated. It stands upon the footing of a gift during life.

5. But whether this be so or not, is a question of fact, to be decided by a jury under the evidence. If the testator, after making his will, "delivered over" this tract of land to Charles Clayton, with intent, (to be made apparent by the facts as they occurred,) to part with his own right and dominion over it, at that time, then it ceased to be his; he gave it away during his life, and by that act he destroyed the legacy, and it did not pass under his will, but by his act during life. We express no opinion as to what the facts do establish. That is for a jury to determine, under the charge of the Court, as to the law, as we have declared it. By the peculiar language of our Code, sec. 2427, it is provided that " the delivery over of the property to the legatee, during the life-time of the testator, is an ademption or destruction of the legacy. As a matter of course, this " delivery " must be with intent, by the testator, to part, then, irrevocably with his own dominion and ownership of the property, and to pass it into the legatee. We think the Court ought to have left the facts of *this* transaction to a jury, charging them as to the law. If, during his life, the testator had delivered over this Alatoona creek place, in Cobb county, to Charles C. Clayton, with intent then and there to pass the right and

dominion of it, irrevocably, out of himself to Charles C., then it passed to him as a gift, and not as a legacy, under this will.

Judgment reversed.