24171, 24172.   DANIEL, Executor, et al. v. DENHAM; and vice versa.

Submitted July 10, 1967—Decided September 7, 1967.

546

*Tyron Elliott, Reinhardt, Ireland, Whitley & Sims, Bob Reinhardt, James H. Pate, John R. Rogers,* for appellants.

*Seymour S. Owens, Perry, Walters, Langstaff & Lippitt, H. H. Perry, Jr.,* for appellee.

MOBLEY, Justice. ▮ It is the general rule that debts of a testator shall be paid, first, from the property charged with the debts by the terms of the will; and, unless otherwise directed by the will, next, from the residuum or the undevised estate; next, from general legacies, which shall abate pro rata; and, finally, specific legacies shall contribute. *Code* §§ 113-821, 113-1509. No provision was made for the payment of debts in the will construed by the judgment under review.

It is conceded by the appellants in the main appeal that a legacy accepted by a widow under a will in lieu of dower and other marital rights will not abate with other legacies to pay debts. It is contended, however, that this rule should not be applied in the present case because the legacy to the widow has a much greater value than the value of her marital rights.

In *Clayton v. Akin,* 38 Ga. 320 (3) (95 AD 393), it was held: "When a legacy left to a wife is expressed to be in lieu of dower, and she elects to take the 'legacy,' she takes it as a *quasi* purchaser, and in a contest between her and other legatees, whether general or specific, she cannot be called upon to abate with them, to make up a deficiency of assets." In the body of this opinion (at page 332) it is stated that cited cases from other jurisdictions "hold that this exemption from abatement, in case of a legacy, though general, in lieu of dower, in case of a deficiency of assets

to pay debts and specific legacies, exists, though the legacy be of greater value than the dower." The latter quotation from *Clayton v. Akin,* supra, was quoted in *Tinsley v. Maddox,* 176 Ga. 471, 486 (168 SE 297). Neither of these cases decided whether a widow's legacy in lieu of dower would abate with other legacies to pay indebtedness of the testator where the value of the widow's legacy is greater than the value of her dower rights.

In the case of In Re Hartman's Estate, 233 Iowa 405, 409 (9 NW2d 359), the Supreme Court of Iowa held: "The widow, by the payment of consideration, i.e., the relinquishment of her dower, is treated not as a mere beneficiary but as a quasi creditor. A testamentary provision for the wife in lieu of dower amounts to an offer by the husband of a price for the extinguishment of dower. By accepting the provision the widow agrees to the terms, relinquishes her dower, and is entitled to the price in preference to those having no legal claim against the estate, whom the testator might have excluded from his bounty. It is, in effect, a matter of contract between husband and wife. The doctrine is applied even though the value of the bequest exceeds the value of her dower, since it is the husband's right to fix whatever consideration he pleases for the surrender of the wife's dower." This appears to be the general rule. See 96 CJS 975, Wills, § 1165; Muse v. Muse, 186 Va. 914 (45 SE2d 158, 2 ALR2d 603); In Re Shepherd's Estate, 152 Ore. 15 (12) (41 P2d 444).

We think this is the correct rule, and the one that should be applied in this State. Therefore, the contention is without merit that the judge erred in allowing the widow to receive a bequest under the residuary clause in Item 9 of the will, without having to contribute to the debts of the estate.

■ Item 8 of the will, giving an estate for life or widowhood to the widow in all of the cash, stocks, and bonds of the testator authorized her use of the principal as well as the income therefrom, the only limitation being that it be used exclusively for her benefit, and not for the benefit of any other person. This intention of the testator is evident from the language allowing her not only to sell the property, but also to "dispose of, or do anything in reference thereto that she may deem proper, without

any order of court, and without the consent, control or interference with her by any other person, . . ." The trial judge correctly so held, and there is no merit in the second assignment of error in the enumeration of errors of the appellants in the main appeal.

■ The judge required the widow to give bond payable to the remaindermen under Item 8 of the will in an amount equal to the value of the stocks, bonds, and cash to which she is entitled under this item, securing the delivery to the remaindermen, at the termination of her estate, of any of this property she had not disposed of for her own benefit during her lifetime. The appellants in the main appeal assert that the judge should have required a bond that would protect the remaindermen from an unreasonable use of the property by the widow during her lifetime or widowhood. The appellant in the cross appeal asserts that it was error to require her to give any security in order to hold these assets, as she was given the right under the will to use and consume them during her life or widowhood.

There have been few cases in this court on the duty of a life tenant to give security to the remaindermen prior to receiving possession of the life estate. In *Barmore v. Gilbert*, 151 Ga. 260 (106 SE 269, 14 ALR 1060), it was held: "Where the subject matter of a life estate is money or its equivalent, or is such property as must be converted into money before possession of the same shall be entrusted to the life tenant, security should be required to preserve the fund for the remainderman, unless a contrary intention of the testator appears in the will." In the *Barmore* case it was pointed out (p. 266) that there was nothing in the will of the testator under consideration "indicating that the testator intended that the life tenant should have the possession of the money and promissory notes belonging to his estate, either with or without security, but the strong intimation is that she should not have possession at all; for he directs in item three that she shall use only the income from his property, 'and under no condition is she to encroach on the corpus, as the income on money that I have now loaned out will be ample for her support and maintenance, she also having the use of my house.'" In the body of the opinion it was said: "Where the

testator has directed that the life tenant have possession of the funds, it has been held that even then the matter of exacting security is regarded as discretionary with the court; and if the testator has not seen fit to require such security, the court will not require it, unless it is shown that there is danger of loss, either because of the irresponsibility of the life tenant, his removal of the estate beyond the jurisdiction of the court, or some similar reason, since the requirement of security might impose on the life tenant a burden which he could not discharge, and thus the intention of the testator would be defeated."

The present case is clearly distinguishable from *Barmore v. Gilbert,* 151 Ga. 260, supra. In Item 8 the testator gave to the widow all of his cash, stocks, and bonds, for her life and widowhood, with the right "to sell, dispose of, or do anything in reference thereto that she may deem proper, without any order of court, and without the consent, control or interference with her by any other person," provided that the sale or disposal of the property should be for her exclusive use and benefit. This plainly evidenced his intention that she should have possession and control of the property, with the right to completely consume these assets, so long as she does not use them for the benefit of any other person. It would be inconsistent with the testator's expressed desire that her management and use of the property shall be "without any order of court, and without the consent, control or interference with her by any other person" to infer that it was his intention to require her to give security for the value of the property in order to have possession of it.

There was no evidence on the trial of the case that there was danger of loss to the remaindermen because the life tenant was removing the estate beyond the jurisdiction of the court, or had given the property away, or would give it away, and not use it for her exclusive benefit. In the absence of a showing of danger of loss to the remaindermen, the trial judge abused his discretion in requiring bond.

*Judgment affirmed on the main appeal; reversed on the cross appeal. All the Justices concur.*