No. 56.—JOHN GRAYBILL and JESSE G. BUTTS, Ex'rs. &c. plaintiffs in error, vs. JESSE T. WARREN, defendant in error.

[1. Whatever produce accrues upon a specific legacy, as interest, rent, hire, or in any other form of profit, from the death of the testator, and nothing more or less, belongs to the legatee, and that, whether the enjoyment of the principal is postponed or not.

In Equity, in Hancock Superior Court. Demurrer, decided by Judge SAYRE, April Term, 1848.

At the October Term, 1847, of the Superior Court of Hancock county, Jesse T. Warren, defendant in error, filed his bill in Equity vs. John Graybill and Jesse G. Butts, plaintiffs in error. The said bill alleges, that in the year 1832, one Jeremiah Warren, of said county, died, leaving a will, the 7th item of which reads as follows : "I give to Jesse T. Warren, son of Jesse Warren, deceased, one negro boy, named Mat, which negro is not to go into his possession until he arrives at full age—twenty-one." That the residuary clause of said will is in the following words : "I give to Jesse G. Butts, and John Graybill, jointly, negroes, Coleman, Mary and her three children, and Pat and John, one choice horse, and four milch cows and calves, two beds and furniture, and all my household furniture except my clock, two spinning wheels, two pair of cards, and four thousand dollars in money, if the money is in hand, if not, the amount in notes, the above, also the tract of land I purchased of Parker, which land is not to be sold for the debts of them, nor shall the negroes be sold by them, or subject to pay any debt of their contracting—the money to be loaned out at interest for the support of the negroes, and if they can at any time be freed by the laws of the country, it is my will it shall be done.

All the remainder of my property, I will to be managed by my executors for five years, in a profitable manner, having regard to humanity in their treatment, not hiring them to any persons who will abuse them. If they cannot have them freed by the laws of our country in that time, they are to be equally divided between my brothers and sisters and their heirs, except Eppa Warren, and James Warren, and Elizabeth Smith, and Susan Johnson, as I do not wish them to have any part in said division; and

Graybill and Butts *vs* Warren.

I do hereby constitute Jesse G. Butts and John Graybill, executors to this my last will and testament, &c., "that the said executors were, in said year, qualified as executors, and took possession of all the property of the said Jeremiah Warren, deceased: that in January, 1833, one Lott Harton, of said county, was appointed guardian of the complainant, and on the day of such appointment, said Butts and Graybill, the Executors, delivered over to said Harton, guardian as aforesaid, the said negro boy Mat, as the property of complainant : that the said Harton hired out the said negro boy Mat, during the years, 1834, 35, 36, 37, 38, 39, the several sums of hire for said years, amounting to $477 62½ : that the said executors, on the 9th day of September, 1839, gave their receipts to said Harton as guardian, for the said amount: that in January, 1840, said executors again took possession of said negro boy Mat, and hired out said boy, during 1840, 41, 42, 43, 44, 45, and 46, for large sums unknown to the complainant, and of what sums of principal for each year above charged, and in what sums of interest accrued thereon, and in all, to what amount of monies the said executors may be in receipt of for the hire of said boy Mat from 1834, to 1847, the complainant prays the defendant may be compelled to answer : that the complainant is the legatee mentioned in the 7th item of said will, he being the son of, and claims to be entitled to all the profits, rights, and interests accruing under the said 7th item of the will : and prays that the defendants may be compelled to account for the hire of said negro from 1834 to 1847.

To which bill the defendants, by their counsel, at the said October Term, filed a demurrer on the following grounds :

1st. Complainant does not state when he arrived to the age of twenty-one years, or that he ever has arrived to such age.

2d. By complainant's own showing, the said negro boy Mat, was not to go into his possession until he arrived to the age of twenty-one years, and he is not entitled to the hire of said negro previous to that time, it being a legacy, the time of the payment of which being postponed, the interest thereon, up to the time when its payment was due, belonged to the residuary legatee.

The complainant's counsel, having announced that they would move to amend the bill so far as to insert an allegation of the complainant's having arrived to the age of twenty-one years, defendant's counsel abandoned the first ground of demurrer.

Said cause was argued at the said October Term of said Court, 1847, and after the argument of counsel, the Court, at the April Term, 1848, of said Court, decided that the demurrer be overruled, and that the defendants be required to answer as to the value of the labor of the slave, Mat, realized by them, to which decision of the Court, counsel for defendants excepted, and alleged error:

1st. Because said decision is contrary to law.

2d. Because, when any legacy is given to be paid at a future day, it does not carry interest before the legacy is due.

3d. Because, by the showing in the Bill of complainant, the testator did not stand *in loco parentis*, and by the will, no hire was due to the legatee until he arrived at the age of twenty-one years.

JOHNSTON & THOMAS, for plaintiff in error.

LEWIS & BARNES, for defendant in error.

JOHNSTON, for plaintiff in error:

It is a general principle, that a legacy payable at a given time, whether vested or not, does not carry interest till that time; for interest is for delay of payment. The only exceptions to this rule, are, 1st, Where the testator is the father of, and 2d. where he stands *in loco parentis*, to the legatee: 3d, where there are express words giving interest, and 4th, where the legacy is the residue. *Eoden* 3, *Ex.* 324. 1 *Chitty's Eq. Dig.* 643. 2 *Kinne's Com.* 94. *Heath vs. Perry*, 3 *Atk.* 102. *Crichet vs. Dolly*, 3 *Ves.* 16. *Tyrrell vs. Tyrrell*, 4 *Ves.* 1. *Heard vs. Greenbank*, 3 *Atk*, 716. 2 *Mod. Ch. Prac.* 98 *to* 106.

2. All these authorities speak of *legacies*, making no distinction between *specific* and *general* legacies as to the question of interest. *Ward on Legacies*, 295.

3. Every devise of land is specific. And if one gives a legacy charged upon land which yields rents and profits, and there *is no time of payment mentioned* in the will, the legacy shall carry interest from the testator's death; not so, then, if a time of payment is mentioned. *Hannock vs. Harton*, 7 *Ves.* 399. *McKinnon vs. Thompson*, 3 *Johns. Ch. Rep.* 308. 2 *P. Wms.* 26.

Graybill and Butts *vs.* Warren.

4. The elementary writers, who maintain that specific legacies carry interest even when the payment of them is postponed, are not sustained by the reports to which they refer.  *Barrington vs. Tristram*, 6 *Ves.* 345.  1 *V. & B.* 362.  2 *Ves. Sr.* 563.

5. An executor, by mistake, made payments to the legatee in respect of his annuity, two years before he was entitled to it. *Held*, that the executor might retain them out of the future payments of the annuity.  *Wms. on Ex'rs.* 1041.  *Livesy vs. Livesy*, 3 *Russ. Ch. Cas.* 287.

6. An executor's assent to a legacy to the wrong legatee, cannot prejudice the rights of the real legatee.

Mr. Lewis' argument for defendant :

" The increase and emolument of specific legacies are severed from the bulk of testator's estate, and appropriated to the enjoyment and benefit of legatees, whether the enjoyment of the principal is postponed or not."  *Roper on Leg. Vol.* 2, 185.  See also *page* 188.  The same doctrine in *Wms. on Ex'rs, Vol.* 2, 1020. When legacies are specific, 1 *Roper*, 149.  General or pecuniary, 1 *Roper*, 256.  See *Ward on Leg. page* 1 *and* 16.

For some of the advantages and disadvantages which attend specific legacies, see 1 *Vernon*, 31.  1 *P. Wms.* 540.  *V.* 679 *and* 80. 3 *P. Wms.* 385.  3 *Vesey, Sr.* 694.

If the interest on specific sums of money, and the increase of animals, go to the legatee, the profit on hire of hands should also go.  See *Wentworth's Off. of Ex'rs, page* 445.  3 *Porter*, 350.

The executors in this case, as will appear on the transcript, once asserted to this legacy and interest accrued on it.

As an assent is but a perfecting act, it cannot, after it is once given, be revoked ; and if given upon conditions subsequent, the conditions are void.  *Ward on Legacies, Marg. page* 367.  *Wentworth Off. of Ex'rs, page* 227.  *Comyn's Digest, Admin. p.* 8.  1 *Vernon*, 460.

The same doctrine is found in *Roper & Williams on Ex'rs*.

A residuary bequest to be paid when the legatee becomes of age, gives a valid interest, and the legatee will be entitled to the profits, if any accrue, between the testator's death, and the attainment by the legatee of his age, 21.  *Chesnut vs. Strong*, 1

*Hill's Ch. R.      Trippe vs. Frazier,* 4 *Har. & John.* 446,      *Jones vs. Jones,* 2 *Hayward.*

When a slave is specifically devised, and the executors assent to the bequest, such slave cannot be recovered by the executors, and sold to satisfy a judgment against them for a debt of the testator. *Lyrn vs. Vic.* 6 *Yerger,* 42.      *Frombo vs. Soseney,* 3 *Monroe,* 238.

In 3 *Atkins.* 101, *Heater vs. Perry,* (see the.decision of the Chancellor, when he comments upon the case of *Philips vs. Carey,*) the legacy was a vested one—the payment also postponed, and the legacy itself specific.

If this hire or interest does not go to the specific legatee, neither does it go to residuary legatees; (for in the residuary clause, nothing is disposed of but negroes—not the profits of the management;) but it goes to the executors.   Here, then, is a contest between the specific legatee of the blood, and the executors, who are strangers.   See *Ram. Legal Judgment, page* 225, *on the Bias of Courts.*

When there is an heir on one side, and a volunteer on the other, there is a constant wish of the Courts to favor the heir at Law. *Wells,* 570.   3 *Wilson,* 13.   3 *Atkins.* 806.

THOMAS, in conclusion, for plaintiff in error:

I contend, that from the authorities quoted by my associate, no case can be found of binding authority on this Court, where legacies payable at a future time carry interest, except in case of standing *in loco parentis,* or where, by the will, interest is not given.

That a contrary doctrine is both contrary to the words and intent of the testator, and is abhorrent to a common sense view of natural justice.

I admit that the case of the Alabama decision comes up to the point at bar, and does establish the principal that a *specific legacy,* payable at a distant day, carries interest from the death of testator, and solely on the ground as placed by the Judge below, that it is specific.

In answer to that case, 1st. That it is of binding force in Georgia, no further than to aid the Court in showing what the law really is, by showing the opinion of an able jurist.

2d. By the decision itself, it shows that tribunal had been

Graybill and Butts *vs.* Warren

misled precisely as the Court below, by Roper and Williams' elementary writings; that by reference to these writings, either Mr. Roper was mistaken, or had no authority for what he asserted, and that Williams and the Court in Alabama were misled by the first error, and constituted but one circle, composing one general error.

The authorities to which Roper refers are *Barrington vs. Tristram*, 6 *Ves.* 345. 1 *V. & B.* 362. 2 *Ves. Sr.* 563.

Not one of the authorities support the elementary writers. The elementary writers are given as the authority of the Alabama decision.

The additional ground by the Court below, that it may be inferred from the will, I maintain that the time of postponement of five years of dividing the property, shows more strongly against carrying interest, than if it had been omitted.

Because, 1st. If the will had been silent as to the time of division then a division must have taken place in contemplation of law within 12 months.

2d. As 5 years were given for the division, if the hire was in the mind of the testator in giving time, the inference would be, that by delaying this long, the residue would be increased, if not all included.

3d. Because, by the words of the will, it is clear the time given was exclusively with a view to give his executors time to free that part of his negroes which he designated a wish to free.

*By the Court.*—Nisbet J., delivering the opinion.

[1.] It is conceded by both sides, that the bequest of the slave Mat, is a specific legacy. The controversy is about a part of the hire during the minority of the legatee. The defendant in error, who is also the legatee, claims that specific legacies, whether the payment is postponed or not, if in money, bear interest from the death of the testator; and if in property which is productive, the profits thereon, belong to the legatee from that period. On the other hand, the plaintiff in error, who is the executor to the will, insists that if the payment of a specific legacy is postponed, it bears interest, if in money, only from the time of payment; and if in property which is productive, the profits belong to the legatee only from the time of payment. In this case

the testator says, " I give to Jesse Warren, son of Jesse Warren, deceased, one negro boy named Matt, which negro *is not to go in his possession* until he arrives at full age, twenty-one." The residuum of his estate, the testator leaves to certain residuary legatees, which is to be divided among them, within five years. The plaintiff in error upon the principle above stated contends that the hire of Mat up to the maturity of the legatee, is a part of the residuum, and goes to the residuary legatees.

Now, it will not be controverted, that the intention of the testator, in relation to the hire of the slave, if it can be ascertained from the will, and from the allegations in the bill, which, the demurrer confesses, must prevail. Although the intention is not perfectly manifest; yet, we think, that it may be fairly inferred, that he intended to give the hire to the specific legatee. The property in Mat, we think, vested absolutely in him—there is no restriction or limitation upon the property—the only limitation is upon the possession. That alone, is postponed until he arrives at twenty-one. From the absoluteness of the gift, and from the fact that by the words of the will, the possession *only* is postponed; we infer that, with Mat, the testator intended the legatee to have also his hire. The usual understanding of a gift of property, is, that it carries with it the rents, issues and profits. This, too, is the legal construction where the will shows nothing to the contrary. The postponement of the possession, is not inconsistent with an absolute property; nor is it inconsistent with a right to the profits—as a general rule, they follow the property. The Bill discloses that the legatee was a minor, and an orphan. It is reasonable to presume, that the testator intended the hire of the slave to be applied to his education and maintenance during his minority. Again he directs the residuum to be paid to the residuary legatees *within five years*, within which time, the specific Legatee would not attain to twenty-one years of age. He then seems to have intended all claim of the residuary legatees before his estate, within that time to be settled. He could not have contemplated any increase of the residuum after that time. He could not have intended that they should have the hire of Mat, accruing after their legacies were paid. If they could not take it, why then, it goes to the specific legatee; or it is an undisposed of portion of his estate, subject to administration. That he intended to leave this hire undisposed of, is not at all reasonable or probable.

Graybill and Butts *vs.* Warren.

The fairest conclusion, is therefore, that he intended it to belong to the legatee. Upon the score of intention, therefore, we think the demurrer was well overruled. But we sustain the judgment of the Circuit Court upon higher grouds.

In relation to *general legacies* the rule is, that when no time is fixed by the will for payment, they are payable at the end of the year after the death of the testator, and not before. This rule is said to be taken from the ecclesiastical Law, which gave the executor one year to get in the estate, and pay the debts and legacies. It is a convenient rule certainly. There ought to be a settled time, at which the executor ought to be liable to account, and not before. It relieves him from pressure by affording time for adjusting and commanding the resources of the estate; it also reduces to certainty what might be the fluctuating exercise of discretion in him, in reference to the priority of the legacies, and being fixed, the claims of all are in the main, no doubt equitably regulated by it. By our Statute, he is not liable to suit for any *matter or cause against his testator,* until twelve months after the probate of the will. As to his liability for legacies, the English Law governs. For the general rule, see *Wood vs. Penoyre,* 13 *Vesey,* 333, 334. *Gibson vs. Bott,* 7 *Vesey,* 96. *Bechford vs. Tobin,* 1 *Vesey,* 308. 1 *Sch. & Less.* 10. 1 *Hovedeus Supl. to Vesey,* 143, 144. *Heath vs. Perry,* 3 *Atk.* 101. *Hearle vs. Greenbank,* 3 *Atk.* 695, 716. *Floyd vs. Williams,* 2 *Atk.* 108. *Maxwell vs. Wittinghall,* 2 *P. Wil.* 62, 2 *Roper on Legacies, ch.* 12, *p.* 172. 2 *Ibid, ch.* 20, *p.* 184. 2 *William's Ex'rs,* 1021, 2. 1 *Sumner, R.* 12, 13. 3 *Dessaus. Reps.* 387. 1 *McCord's Ch. R.* 94. *Ibid,* 148. 14 *Sergt. & Rawle,* 238. As a necessary inference from this rule, interest is not generally payable upon a pecuniary legacy, until one year after the death of the testator. For interest cannot be claimed in any case until the money is due, and from the time it is due. If the will provides that interest shall be paid before, of course, it must be paid according to the directions of the will. So also if the will fixes a future day for the payment of a general legacy, it is not payable until that day, and it does not bear interest till that day. See the authorities before cited—also, *Sitwell vs. Bernard,* 6 *Vesey,* 520, 529. *Webster vs. Hale,* 8 *Vesey,* 410, 413. *Tyrrel vs. Tyrrel,* 4 *Vesey,* 1. 3 *Vesey,* 102. *Crichett vs. Dolly,* 3 *Vesey,* 10. 2 *Williams, Ex'rs,* 1024. There are some exceptions to these general rules, as to the time when interest is due. The

principal of which is, that if the testator is the parent of the infant legatee, or is *in loco parentis*, the legacy bears interest from the death of the testator, whether the time of payment is postponed or not, unless there is also in the will, provision for the maintenance of the child. See *Achorly vs. Vernon*, 1 P. *Williams*, 783. *Hill vs. Hill*, V. & B. 183. *Mills vs. Roberts*, 1 *Russ.* & M. 555. *Leslie vs. Leslie. cas. temp. Sugd.* 4. 1 *Sumner R.* 14, 15. *Bitror's Ex'r, vs. Hahn et ure,* 14. *Serg* & *Rawle,* 238. *Raven vs. White,* 1 *Swanst.* 553. *Harvey vs. Harvey,* 2 P. *Williams,* 21. *Incledon vs. Northcoat,* 3 *Atk.* 438. *Chambers vs. Goldwin,* 11 *Vesey,* 2. *Brown vs. Simpuly,* 3 *Russ. Ch. Cas.* 263. 1 *Cox,* 433. 2 *John. Ch. R.* 614. 2 *Roper on Legacies, Ch.* 20, *passim.* Without pursuing the general doctrine as to interest on pecuniary legacies, or tracing the exceptions farther, I proceed to say that the controversies in the books, as to the interest on legacies, have relation, almost universally, to general legacies, with which specific legacies, and therefore this, can have nothing to do. They stand upon different ground. Specific legacies differ from general legacies in several particulars. There is no abatement of them to pay debts. That is to say, all legacies yield to debts; and general legacies, as a general rule, give way to those that are specific. If abatement be necessary, it falls first upon general legacies, even to their entire extinction. There are exceptions to this rule, which it is not necessary for me here to note. 2 *Williams on Executors,* 972, 973. *Toller's Executors,* 339. *Clifton vs. Burt,* 1 P. *Will.* 679. 2 *Black. Com,* 513.

On the other hand, if they fall short, they cannot be made up from any other source. In relation to them, the elementary writers all say, that whatever produce accrues upon them from the death of the testator, as interest, rent, hire, or any other form of profit, and nothing more or less, belongs to the legatee; and that whether the enjoyment of the principal be postponed or not. I am not aware of a single authority which asserts a doctrine contrary to this. There are but few cases to be found, where a question as to the profit accruing upon a specific legacy, has been made. This is unquestionably owing to the universal consent of the profession to, and the acquiescing of the Courts in the rule. In the argument of counsel, and in the opinions of the Bench, I find it invariably referred to as a thing conceded. A specific legacy is considered as separated from the general estate, and appropriated

to the legatee. It is set apart in special property for him, and to the property attaches the right to its produce. It vests at the death of the testator, and interest or produce is demandable upon it, from that time. *Ward on Legacies*, 299. 2 *Williams' Executors*, 1021. 2 *Roper on Legacies*, 3 *Edit.* 227.

I refer to a few cases, in which the rule I have stated has been recognised in Courts of the highest authority in England and America. In *Webster vs. Hale*, 8 *Vesey*, 410, one of the questions made, was whether a legacy of stock bore interest from the death of the testator, or from the end of one year thereafter, and this was made to depend upon the question, whether it was a speicfical legacy or a general legacy. The Master of the Rolls said, " When legacies of stock are determined not to be specific, the value is always directed to be ascertained at the end of a year. The old *dicta* have been overturned by the modern cases; or at least, are totally neglected. In every direction, when once it is ascertained that a legacy is pecuniary, the interest is given from the end of the year." In explanation of *pecuniary legacies*, it may be necessary to remark, that although there may be a specific legacy in money, yet these words, in this case, and generally, mean general legacies. Again, in the same case, the Master of the Rolls says: "Upon the other question, after the cases which have been decided, it is impossible to say these are not pecuniary legatees; and therefore, no interest is to be given upon any, except from the end of twelve months from the death of the testator."

*Lord Eldon*, in discussing a similar question, concludes by saying, " This being a specific legacy of stock, dividends are due, from the death of the testator." 6 *Vesey*, 345. The bearing of these *dicta* upon this case, will be understood when it is remembered, that *general* legacies, where there is no time of payment specified, are not payable, and consequently do not bear interest until one year after the death of the testator. The struggle in these cases, on the part of the legatee, was to show that the legacies in question, were specific and not general; and for that reason, bore interest from the death of the testator.

In *Greene vs. Pigot*, a legacy was left to a female infant, to be paid at twenty-one or at marriage, with interest at 4 per cent; and if she die before, to sink into the residuum. The Court ordered the legacy to be paid into Bank for security, and the prin-

cipal question was, whether, if the legacy yielded more profit than ¡4 per cent, the excess should go to the infant. The Court decreed that it should be to the use of the infant. The Lord Chancellor remarking, " The Master of the Rolls has done right in ordering it to be laid out in the funds. But if it should yield more than 4 per cent. who is to have the surplus ? I may order it to be paid to the executor. But should it produce less, can I order the executor to make it up ? No ! I think, therefore, the produce must be to the use of the infant." 1 *Brow. Ch. R.* 103. This is a case in point. There was a postponement of the time of payment, and although the testator directed interest at 4 per cent. to be paid, yet as to any interest over that rate, the will was silent. So far as the excess of produce is concerned, it is the case at this bar. The case of *Chaworth vs. Hooper*, is equally as strong. There was a devise of residue to an infant, *payable at twenty-one*, with remainder over. The infant died under age, and it was decreed, that the interest from the death of the testator to the death of the infant, should go to her representatives ; not to the remainder-man. *Mr. Baron Eyre*, said, " he could not distinguish this case from that of *Nichols vs. Osborn*, 2 *Williams*, 419. The whole residue is here given to the infant ; what is to become of the produce ? Where would the use be, if it were a specific thing, or the rents, if land ? The interest is the natural produce. It is not a charge upon any body. *The produce must go to the person who has the thing liable to be divested ; when divested, it must from that moment go to the person who comes in.*" 1 *Brown's Ch. R.* 82.

*Mr. J. Story*, in *Sullivan et ure. vs. Winthrop et. al.*, in discussing the question whether a general legacy bore interest from the death of the testator, recognises the rule in the following words: " Nor is this the case of a specific legacy of property or funds earning interest. *If it were, I agree that whoever is entitled to the specific property or fund, is entitled to the income or increment, as an adjunct.*" 1 *Sumner's Reps.* 12.

Precisely the question made in this record, came before the Supreme Court of Alabama, in *Christian vs. Christian*. The testator bequeathed as follows : " I give to my grand-son John W. Christian, an equal dividend of the slaves, with the following named children, (naming them,) to be equally divided when James A. Christian arrives at the age of twenty-one years." The guar-

Graybill and Butts *vs.* Warren.

dian of John W. Christian, filed a petition against the administrator *cum testamento annexo*, of the testator, in the Orphan's Court, praying an account of the estate of his ward.    The petition demanded an account of the hire of the negroes willed to the minor, from the death of the testator until the period of the distribution.    Without noting the immaterial variations, between this case and the one we are reviewing, I think it will be admitted that the question made in both is the same.    The Supreme Court of Alabama, through *Hitchcock, C. J.,* held as follows: " The bequest in this case is what the law denominates a legacy of quantity,  in the nature of a specific legacy ;  as when so much money is bequeathed with reference to a particular fund for its payment; to which, except in some cases applicable to this kind of legacy, the rules applicable to specific legacies apply; which are considered as  severed from  the  bulk  of the testator's property, by the operation of the will, from the testator's death; and with their increase and emoluments, specifically appropriated for the benefit of the  legatee, from that period ;  upon which interest is computed, from the death of the testator.    And it is immaterial whether the enjoyment of the principal is postponed by the testator or not."    3  *Porter R.* 350, 351, 352.    *See also,* 4  *Vesey,* 563.    5  *Ibid,* 205.    8  *Ibid,* 413.    1  *Swanst.* 557.    2  *P. Will.* 26. 3  *Ibid,* 254.    9  *Vesey,* 483.    1  *Brow. Ch. R.* 335.    1  *Vesey,* 185. *Ambl.* 96.    3  *Meriv.* 345, 346.    4 *Brow. C. C.* 144.    2  *Vesey, Sen.* 563.

Let the judgment of the Court below be affirmed.