### 30723. ALFORD et al. v. CITIZENS & SOUTHERN NATIONAL BANK et al.
### 30724. DUNLAP v. CITIZENS & SOUTHERN NATIONAL BANK et al.
### 30787. CITIZENS & SOUTHERN NATIONAL BANK v. ALFORD et al.

GUNTER, Justice.

These appeals evolve from a three-way lawsuit among the bank as co-executor of the testator's estate, the widow of the testator as the legatee, and numerous beneficiaries of a trust established by the testator's will.

We have two issues for decision: (1) the construction placed upon the testator's will by the trial court, and (2) whether the trial court committed error in ordering the payment of attorney fees from assets of the estate to counsel for the widow and to counsel for three of the beneficiaries of the trust.

The bank as co-executor instituted this action below in order to procure a judicial construction of the will. The construction contest was between the widow on one side and the beneficiaries of the trust on the other side, with the bank primarily taking the stance of a stakeholder.

On the counsel fees issue, the bank takes the position that the assets of the estate are not liable for counsel fees for the two contesting sides on the construction issue.

The construction issue was submitted to the trial judge for decision by agreement of all parties. The trial judge had before him the pleadings but no extrinsic evidence. The testator's will was a part of the pleadings.

The trial judge construed the will in favor of the widow's contentions and ruled adversely to the contentions asserted by the beneficiaries of the trust. The trial judge also allowed counsel fees, out of the assets of the estate, to the contesting parties as stated above. These three appeals have been taken from his final judgment.

### The Construction Issue

Item five of the testator's will gave the widow $1000 in cash, "all household furniture, personal effects not specifically mentioned elsewhere in this will, works of art, automobiles, and all bonds, capital stock or other securities which I may own at the time of my death, and

the following real property (describing a tract of land in Jasper County, Georgia)."

Item six provided that the remainder of the testator's property would go to the trust, the trustee would make certain monthly payments to the widow and, under specified conditions, certain annual payments to the widow and other beneficiaries. The trustee was authorized to encroach on the corpus of the trust for the proper maintenance and support of the widow, and upon the death of the widow the trustee was directed to pay the trust assets to beneficiaries designated by the testator.

In Item six the testator, in describing the remainder of his property that was to go to the trust, specified his residence, three businesses, tracts of real estate, hospital rights and formulae and equipment, "and all other property of every kind and description, tangible or intangible, real or personal, wherever found and wherever located, . . ."

Item eight of the will read: "All bonds, bank accounts, savings accounts, building and loan accounts, and other similar property I may own at the time of my death in the name of myself and/or my said wife which are in terms payable on or after my death to her shall be the sole property of my said wife and my executor shall make no claim against her on account thereof."

The assets of the estate that are the subject of the contest between the widow and the trust beneficiaries are notes secured by real estate, savings and loan association certificates of deposit, and savings and loan association passbook accounts. The widow contends that these items passed to her under Item five of the will as "bonds, capital stock or other securities which I own at the time of my death." The beneficiaries of the trust contend that these items go to the trust rather than to the widow, because they are not "bonds, capital stock or other securities" within the overall context of the testator's will.

First, we conclude from a mere reading of this will that it does not utilize the normal language used to effectuate the maximum use of the marital deduction for estate tax purposes. Item five gives specified assets to the widow; Item six provides that all other assets shall go into the trust; Item six also provides that the trustee shall

make specified monthly and annual payments to the widow and specifies, under certain conditions, that the trustee shall make annual payments from the trust to other beneficiaries; Item six provides that all other property, "tangible or intangible," not specified in Item five shall go into the trust; and Item eight provides that all savings accounts and other similar property owned by the testator jointly with his wife "which are in terms payable on or after my death to her" shall be her sole property and not assets of his estate.

Furthermore, there is no extrinsic evidence in this case that shows the size of the testator's estate or whether the assets left to the widow were an attempt to take maximum advantage of the marital deduction for estate tax purposes. Therefore, the principle of construction of a will enunciated in *Strickland v. Trust Co. of Ga.*, 230 Ga. 714 (198 SE2d 668) (1973) is not applicable in this case.

We have looked at the definition of the word "securities" in various dictionaries and statutes and we conclude that the promissory notes, certificates of deposit, and passbook deposit accounts can be held to be "securities" or held not to be "securities."

In *Cosgro v. Quinn,* 219 Ga. 272 (133 SE2d 343) (1963), this court held that a bequest of "stocks, bonds and cash" did not include promissory notes. However, in some contexts we can visualize that a promissory note secured by real estate or deed of trust could be held to be a "security."

In Huckabee v. Hansen, 422 SW2d 606 (Tex. Civ. App.) a Texas court held that a bequest of "all stocks, bonds and other securities" did not include savings accounts at a bank and at a savings and loan association. However, in other contexts we can understand how certificates of deposit could be held to be "securities." See Victory Nat. Bank of Nowata v. Oklahoma State Bank, Vinita, 520 P2d 675 (1974).

Also, we acknowledge that savings and loan association deposits, by certificate and passbook, have some of the attributes of a "security" in that the depositor has some voice in electing the operating directors of the association.

But in the overall context of this will we conclude

that the testator did not mean that promissory notes held by him and deposits in savings and loan associations, by certificate or by passbook, were "other securities" that would pass to the widow under Item five of the will.

Item six indicates to us that all of his other property, "tangible and intangible," was to go to the trust. And Item eight of the will says that his interest in joint savings accounts "which are in terms payable on or after my death to her" shall be the property of the widow and pass to her directly, not as an asset of his estate.

We simply cannot read these provisions of the will together and conclude that the testator meant for promissory notes held by him and his own savings and loan deposits to be "other securities" as those two words are used in Item five.

Acknowledging that the decision on this issue is close and difficult, we nevertheless respectfully disagree with the trial judge and reverse on this point.

### The Counsel Fees Issue

Because the widow and the trust beneficiaries made adverse claims to the notes and savings and loan deposits, it was necessary for the bank to file a complaint and procure a judicial determination as to whether the widow's contention or the trust beneficiaries' contention was correct. In short, the actual litigants in this multi-party case were the two parties who were awarded counsel fees from the assets of the estate.

The general rule in Georgia is that, absent unusual circumstances, each litigant must pay the fees for his own attorney. The two contesting sides here were responsible for the initiation of the litigation, because their claims were adverse to each other. This is not a case where a beneficiary is in a contest with the personal representative of an estate because the claim of the beneficiary is adverse to that of the personal representative. "As a general rule, in the absence of statutory authority, a court of equity cannot under ordinary circumstances, in an adversary proceeding, allow attorneys fees to the prevailing party . . . There is a generally recognized exception to this rule, and that is: a court of equity in its discretion may, by order, allow counsel fees to a party who at his own expense has

maintained a successful suit for the protection or increase of common property or a common fund." *Ewing v. First Nat. Bank of Atlanta,* 209 Ga. 932, 933 (76 SE2d 791) (1953).

In *McFarland v. Lumpkin,* 110 Ga. App. 222 (138 SE2d 194) (1964) the Court of Appeals held that where the litigation was not between the estate and a third party but was for the purpose of determining rights between possible heirs to the estate, the assets of the estate were not chargeable with counsel fees for the actual litigants.

We hold that where the actual contest in a will construction case is between beneficiaries of the estate, and the personal representative is merely a stakeholder as in this case, it is error for the trial court to award attorney fees to the actual contesting litigants out of the assets of the estate.

Furthermore, even if we were to hold otherwise, the judgment in this case would have to be reversed, because there is no evidence in the record of the value of the services performed by the attorneys for the actual adverse litigants.

*Judgment reversed. All the Justices concur, except Jordan, J., who dissents, and Nichols, C. J., disqualified.*

ARGUED FEBRUARY 10, 1976 — DECIDED JUNE 22, 1976 — REHEARING DENIED JULY 8, 1976.

*Schroder, Nicholson & Meals, E. Penn Nicholson,* for Barbara Banning Alford et al.

*Mitchell, Clarke, Pate & Anderson, Paul H. Anderson, Nall, Miller & Cadenhead, John K. Dunlap, J. Wayne Pierce, James B. Outman, Schroder, Nicholson & Meals, E. Penn Nicholson,* for C. &. 'S. Nat. Bank et al.

John K. Dunlap, *pro se* (case no. 30724).

*Paul H. Anderson, Schroder, Nicholson & Meals, E. Penn Nicholson, John K. Dunlap,* for Frances Glaze Alford et al.

JORDAN, Justice, dissenting.

I dissent from that portion of the majority opinion dealing with the construction of the will.

It is elementary that the courts in construing a will must look to the four corners of the will in an effort to determine the intention of the testator. The rule is simple. Its application can be extremely difficult.

The difficulty in this case is to apply the rule to the language "or other securities" as used in Item 5 of the testator's will. As set forth in the majority opinion there is case law to uphold differing interpretations. The majority opinion states, "we simply cannot read these provisions of the will together and conclude that the testator meant for promissory notes held by him and his own savings and loan deposits to be 'other securities'. . ." Under my reading of the will I simply reach a different conclusion.

It is clear that the notes secured by real estate and the savings and loan certificates must be included under either Item 5 or Item 6 of the will. My conclusion that the testator intended that they be included in Item 5 of the will rests mainly on the fact that they are more closely related to the class of property devised under Item 5 of the will than to the property devised under Item 6 of the will. It is noted that Item 5 deals with furniture, personal effects, works of art, automobiles, bonds, stocks, or "other securities." In my opinion this catch-all phrase "other securities" as used by the testator in Item 5 encompasses notes and other assets secured by written evidence of an indebtedness, such as notes and certificates of deposit. In setting up the trust in Item 6, the testator was dealing with assets of a different nature, mainly his residence, tracts of real estate, hospital rights and equipment. In my opinion the catch-all phrase in Item 6 "and all other property of every kind and description, tangible and intangible, . . ." related only to property similar to that described in that Item.

In other words, looking at Item 5 and Item 6 together it is my opinion that the notes secured by real estate and the savings and loan certificates more nearly fit in the class of the assets devised in Item 5 than in the class of assets devised in Item 6.

This construction is bolstered by Code Ann. § 97-102 (a) (16) which defines a security as follows: " 'Security' means any *note,* stock, treasury stock, bond, debenture, *evidence of indebtedness, certificate of indebtedness,*

investment certificate, certificate of interest or participation in any profit sharing agreement, . . . or any other instrument commonly known as a security, . . ." (Emphasis supplied.)

I agree with the construction as given in the trial court's order and since I agree with that portion of the majority opinion as to attorney fees, I would affirm with direction that the award of attorney fees be stricken from the judgment.

I respectfully dissent.