36364, 36473. DUBOSE et al. v. BOX et al. (two cases).
36365. CALHOUN v. DUBOSE et al.
36366, 36475. DUBOSE et al. v. DUBOSE et al. (two cases).
36367. WADDELL v. DUBOSE et al.
36474. CALHOUN et al. v. DUBOSE et al.

PER CURIAM.

This will case began by the executrices of the estate of Jefferson Denman Box filing a petition in the Muscogee Superior Court for construction of the testator's will.[1] In the petition, the executrices seek direction from the court as to whether three bequests of municipal bonds in the respective amounts of $200,000, $500,000 and $600,000 are to be funded with municipal bonds valued at market value or face (par) value. The executrices also ask from what point in time interest allocable to the municipal bonds used to fund these bequests is distributable with the bequests. In addition, the petition states that there are insufficient assets in the residuary estate to pay the debts of the estate, expenses of administration, and estate and inheritance taxes. Direction is sought as to whether various bequests in the will are specific, general, or demonstrative, so as to determine their order of abatement.

This case can best be presented by reviewing the facts giving rise to it, the superior court's rulings, and our decision on appeal.

### Facts of the Case.

The evidence shows that the testator was a nonpracticing attorney who had invested in the stock and bond markets for over 30 years. The will was executed by him on March 22, 1979. Insofar as is relevant to these appeals, the testator provided as follows in his will:

In Item I of the will, the testator directs that all estate, inheritance and other death taxes imposed on the estate be paid out of the residue of the estate, "except that my executrices shall recover from the recipients of any property includable in my estate for federal estate tax purposes because of a Power-of-Appointment held by me, the portion of such taxes legally recoverable."

The municipal bond bequests are found in Items II, IV, and V. In Item II, the testator gives to his wife, Kathryn S. Box, provided that she survive him, "the sum of Six Hundred Thousand Dollars

---

[1] Such a petition is authorized by Code Ann. §§ 37-404 and 110-1107.

($600,000) in Tax Free Municipal Bonds of the State of Georgia or political subdivisions thereof to be hers absolutely in fee simple, said bequest to her to be in lieu of dower, year's support, and any and all other benefits provided for by law. I direct that this bequest be fulfilled within sixty (60) days of my death."

In Item IV, the testator gives to his secretary, Jeanne Ewing Cremer, provided that she survives him, "the principal sum of Five Hundred Thousand Dollars ($500,000) in Municipal Tax Free Bonds of the State of Georgia or political subdivisions thereof." This bequest is in trust, and the Columbus Bank and Trust Company, Columbus, Georgia, is named as trustee. It is provided in Item IV that the trustee shall pay over the income from these bonds to the secretary in monthly installments of $2,000 per month for the duration of her natural life, and that on her death the principal of the trust shall revert to and become a part of the testator's general estate. The testator directs that the Item IV trust be established within 30 days of his death.

In Item V, the testator gives to his "faithful household staff," Henry Lyles, Lillie Mae Wheeler, and Maude Lyles, provided they or any of them shall survive him by at least 30 days, "the principal amount of Two Hundred Thousand Dollars ($200,000) in State of Georgia Municipal Bonds . . ." This bequest is made in trust to the Columbus Bank and Trust Company, and the trustee is directed to pay over the sum of $200 per month to each beneficiary of the Item V trust for as long as they shall live. When all of the beneficiaries of this trust die, the trust terminates and the principal of the trust reverts to the testator's general estate.

In Item III, the testator gives "FOUR HUNDRED SEVENTY-TWO (472) shares of common stock of National Distillers and Chemical Company" to Jefferson Denman Box Du-Bose. In Item IX, the testator gives "FIVE THOUSAND EIGHT HUNDRED (5,800) shares of the Common Stock of The Coca-Cola Company" to his stepgranddaughter, Frances Waddell Calhoun. In Item X, he gives "FIVE THOUSAND EIGHT HUNDRED (5,800) shares of the Common Stock of The Coca-Cola Company" to his stepgrandson, Beverly M. DuBose, III. In Item XI, he gives "FIVE THOUSAND EIGHT HUNDRED (5,800) shares of the Common Stock of The Coca-Cola Company" to his stepgranddaughter, Dean DuBose Lewis Smith.

Items VI, VII, and VIII are devises of real property. In Item XII, the testator directs that the residue of the estate be divided into two shares, each share to be held in trust, the income to be paid to various lifetime beneficiaries and the remainder to be paid to the beneficiaries' children.

The testator died on May 16, 1979. As of the date of his death, his estate was valued at approximately $3,605,000, less approximately $174,000 in gifts made by the testator within three years prior to his death and, therefore, includable in his estate for estate tax purposes. The assets of the estate included municipal bonds of the State of Georgia having an aggregate par value of approximately $1,695,000 and an aggregate fair market value of approximately $1,600,000 as of the date of the testator's death. In addition, the testator owned 472 shares of the common stock of National Distillers and Chemical Company and 17,450 shares of the common stock of the Coca-Cola Company. (The record shows that at the time the testator wrote his will he owned 17,400 shares of Coca-Cola stock; however, he purchased an additional 50 shares prior to his death.)

On May 18, 1979, the will was probated in solemn form in the Probate Court of Muscogee County, and letters testamentary were granted to the executrices named in the will, Frances Woodruff DuBose and Virginia Woodruff Waddell, who are the testator's stepdaughters. The executrices filed this petition for construction of the testator's will on October 11, 1979. On December 10, prior to being served in this suit, the widow filed a petition for accounting against the executrices in the probate court.[2] This petition for accounting was made the subject of a counterclaim in this suit.

## Superior Court's Rulings.

The superior court ruled that the Item II, IV and V bequests are to be funded with municipal bonds valued at fair market value. The court further ruled that the beneficiaries of the Item II and IV bequests are entitled to the income earned on the bonds used to fund their bequests since the date of the testator's death, as well as interest on this income. It was held by the court that each beneficiary of the Item V bequest is entitled to $200 per month in income (plus interest) earned on the municipal bonds used to fund his bequest, beginning 60 days after the testator's death.

Although the superior court determined that the Item II, IV, and V bequests all constitute demonstrative legacies for the support of the beneficiaries, the court ruled that each bequest would abate differently. The court ruled that the Item II bequest to the widow is not subject to abatement, because the widow took this bequest in lieu

---

[2]Under Code Ann. § 113-2201 (Ga. L. 1977, pp. 455, 456), a distributee or legatee may not cite an executor for a settlement of accounts until after the expiration of six months from the grant of administration. See Code Ann. § 113-1101.

of year's support and, therefore, as a quasi purchaser. The court ruled that all of the bequests except the Item II bequest to the widow will abate before the Item IV bequest to the secretary, because the Item IV bequest was made in fulfillment of a promise made by the testator to the secretary in 1973 that, if she would serve as his personal secretary until his death, he would provide for her in his will. As to the Item V bequest, the court ruled that this bequest is not subject to abatement, because it is for the support of the testator's household staff.

The superior court awarded attorney fees to the beneficiaries of the Item II, IV, and V bequests, on the ground that the executrices abused their discretion by not funding these bequests within the time limits specified in the will, thereby putting the beneficiaries to unnecessary trouble and expense. The court awarded attorney fees to the trustee of the Item IV and V trust on the same ground. The court upheld the award of attorney fees to the Item II, IV, and V beneficiaries on the additional ground that the counterclaim filed by the widow, as well as the responsive pleadings filed by the secretary and household staff, led to the proper administration of the estate.

As to the Item III, IX, X, and XI bequests, the superior court ruled that these bequests of stock constitute general legacies, and will abate first if the residue is not sufficient to pay taxes, debts, and expenses of administration.

The superior court's ruling concerning the Item II bequest came in an order entered on March 13, 1980. The remaining issues were disposed of in an order entered on April 23, 1980. In Case No. 36364, the executrices appeal the March 13 order. In Case Nos. 36365, 36366 and 36367, various stepchildren and stepgrandchildren of the testator, who are named as residuary legatees in the will, appeal the March 13 order. In Case No. 36473, the executrices appeal the April 23 order. In Case Nos. 36474 and 36475, the stepchildren and stepgrandchildren appeal the April 23 order.

## Appeal.

1. At the outset, it is important to note that the cardinal rule in the construction of wills is to give effect to the intention of the testator as gathered from the four corners of the will and, in cases of ambiguity, from the surrounding circumstances. *Thomas v. King,* 182 Ga. 463 (2) (185 SE 820) (1936); *Owens v. C. & S. Nat. Bank,* 177 Ga. 289 (3) (170 SE 196) (1933). See generally, 1 Redfearn, Wills, Ga., §§ 142, 144 (4th Ed.). Thus, the abiding question in this case is, what did the testator intend?

2. The only real testimony in this case shedding any light on the question of how the testator intended to fund the Item II, IV, and V

municipal bond bequests is found in an affidavit given by his stockbroker of some 30 years.

In this affidavit, the stockbroker testified to the following effect: In the bond market and brokerage industry, it is an established practice to refer to bonds by their par or face value, as opposed to the practice of referring to stocks by their current market value. The testator was familiar with this practice. Although the testator purchased numerous bonds through the affiant, the affiant has no record of the testator's selling any of these bonds. In the brokerage industry, the generally accepted meaning of the term "principal," when used in reference to bonds, is "face value." During the affiant's conversations and business dealings with the testator, the testator referred to bonds according to their face value, or face value and price per $100 of par, a practice which is standard and generally accepted in the brokerage industry.

As previously stated, this affidavit given by the testator's stockbroker is the only testimony in the record shedding any light on the question of whether the testator intended to fund the Item II, IV, and V bequests with municipal bonds valued at market or face value. Since the language of the will contains no expression of the testator's intention in this regard, this affidavit is admissible as showing the circumstances surrounding the testator at the time he executed the will. See Code § 113-807; *Donehoo v. Donehoo,* 229 Ga. 627, 629 (193 SE2d 827) (1972); *Wiley, Parish & Co. v. Smith,* 3 Ga. 551, 557 (1847).

(a) We hold that the trial court was correct in ruling that the Item II bequest is to be funded with municipal bonds valued at fair market value as of the date this bequest is actually funded. In this bequest, the testator uses the word "sum," as opposed to the term "principal sum," and this bequest is given to the testator's wife in fee simple rather than in trust. It is also significant that this bequest escapes federal estate taxation because of the marital deduction. For the foregoing reasons, we conclude that the testator intended to fund the Item II bequest with municipal bonds valued at fair market value.

(b) However, the Item IV and V bequests are in trust, and the intent of these bequests is to provide the beneficiaries with certain specified incomes. The income generated by the municipal bonds remains constant despite fluctuations in their market value between the date the bonds were issued and the date they will be retired. In the Item IV and V bequests, the testator uses the term "principal sum," and, as previously stated, in the bond market this means face value. Therefore, we conclude that the Item IV and V bequests are to be funded with municipal bonds valued at face value.

3. The next questions we face concern how the various bequests in the will are to be classified and the order in which they will abate. In

determining the order of abatement, the initial question we must ask is, again, what did the testator intend? Aside from the direction in Item I of the will that estate, inheritance and death taxes be paid out of the residue, the language employed in the will does not contain any expression of an intention by the testator to regulate the order of abatement. However, there do exist rules of law governing the order of abatement in the absence of an expression of intention by the testator.

"It is the general rule that debts of a testator shall be paid, first, from the property charged with the debts by the terms of the will; and, unless otherwise directed by the will, next, from the residuum or the undevised estate; next, from general legacies, which shall abate pro rata; and, finally, specific legacies shall contribute. Code §§ 113-821, 113-1509." *Daniel v. Denham,* 223 Ga. 544, 547 (156 SE2d 906) (1967).

Although Code § 113-808 recognizes only general and specific legacies, the cases recognize a third type of legacy, referred to as a demonstrative legacy. As stated in *Bailes v. Halsey,* 179 Ga. 182, 184 (175 SE 472) (1934), "Legacies are usually divided into three classes: (1) general or pecuniary; (2) specific; (3) demonstrative."

A specific legacy gives to the named legatee a particular article or item of property owned by the testator, which is identified and distinguished from all others of the same nature, and which may be segregated from the mass of the testator's other property or estate. *Henderson v. First Nat. Bank,* 189 Ga. 175, 178 (5 SE2d 636) (1939). "A specific legacy is one which operates on property particularly designated." Code § 113-808. The primary disadvantage of a specific legacy is that if the particular property described in the specific legacy is disposed of by the testator during his life or cannot be located at his death, it is adeemed and the legatee has no claim on the estate for the value of the legacy. *Thompson v. Long,* 202 Ga. 718 (44 SE2d 651) (1947).

A general legacy is one which does not direct delivery of any particular property; it is not limited to any particular asset and may be satisfied out of any property of the same general character belonging to the estate of the testator. " 'A general legacy is a gift of something to be furnished out of the testator's general personal estate; it need not form part of the testator's property at the time of his death.' " *Young v. Young,* 202 Ga. 694, 701 (44 SE2d 659) (1947). However, general legacies do have certain disadvantages. As previously stated, if the other assets of the estate are insufficient to pay the debts of the estate, general legacies abate first to make up the deficiency, followed by the abatement of specific legacies. *Daniel v. Denham,* 223 Ga. 544, supra.

A demonstrative legacy, which is something of a hybrid between a general and specific legacy, contains the beneficial characteristics of each. " 'A demonstrative legacy is one which designates the fund or property from which it is to be satisfied, but is nevertheless an unconditional gift to the legatee of the amount or value specified. That it names a particular fund or other property from which it is to be satisfied is considered to be demonstrative of a convenient mode of payment; if that mode fails, the legacy is to be satisfied out of the general assets of the estate. A demonstrative legacy differs from a general legacy in that it does not, in the first instance, abate upon insufficiency of assets to pay the debts of the estate and the expenses of distribution; it differs from a specific legacy in that there is recourse for its payment from the general assets of the estate in the event of ademption in part or in whole.' " *Thomas v. King,* 182 Ga. 463, supra, p. 467; *Owens v. C. & S. Nat. Bank,* 177 Ga. 289, supra, pp. 295, 296. "Demonstrative legacies are a peculiar kind which partake of the nature of both specific and general legacies, and combine the advantages of each. Demonstrative legacies are bequests of sums of money, or of quantity or amounts having a pecuniary value and measure, not in themselves specific, but made payable primarily out of a particular designated fund or piece of property belonging, or assumed to belong, to the testator." *Owens v. C. & S. Nat. Bank,* 177 Ga. 289, supra, p. 296.

Since the testator at the time of his death had sufficient municipal bonds in his estate to fund the Item II, IV, and V bequests, we agree with the superior court that these bequests constitute demonstrative legacies.

However, we disagree with the superior court that the Item III, IX, X and XI bequests of stock are general bequests. These latter bequests are gifts of specified shares of stock in specified companies. And the testator, at the time he wrote the will, owned the same number of shares of stock in these companies as are bequeathed in the Item III, IX, X and XI bequests. We thus conclude that these stock bequests are specific.

The classification of these bequests as specific or demonstrative does not end our inquiry concerning how the bequests will abate. For the usual rule that general legacies abate pro rata first, followed by the pro rata abatement of specific and demonstrative legacies, is subject to exceptions.

The exception which was recognized by the superior court in this case is that a bequest accepted by a widow in lieu of year's support (or, previously, dower) has a priority over other bequests insofar as abatement is concerned. See *Killingsworth v. First Nat. Bank,* 237 Ga. 544 (8) (228 SE2d 901) (1976); *Clayton v. Akin,* 38 Ga. 320 (3)

(1868). The reason for this is that the widow, by waiving year's support, gives up a valuable right, and this even gives her a preference over certain creditors of the estate. *Tinsley v. Maddox,* 176 Ga. 471, 486 (168 SE 297)(1933). We agree with the superior court that the Item II bequest to the widow will not abate until other assets of the estate are depleted, since the widow took this bequest in lieu of year's support.

There is another exception under which a bequest for the support and maintenance of a near relative is given priority over other bequests of the same class, where no other provision is made for the near relative's support. Re Cameron's Estate, 278 NY 352 (16 NE2d 362, 117 ALR 1333) (1938); see generally, 6 Bowe-Parker: Page on Wills, § 53.14. Although in *Owens v. C. & S. Nat. Bank,* 177 Ga. 289, supra, this court found an intention on the part of the testator to give priority to a bequest for the support of a near relative, *Owens* does not expressly recognize this as an exception to the usual rules governing abatement. In any event, the Item IV bequest to the secretary and the Item V bequest to the household staff do not qualify as bequests for the maintenance and support of near relatives, nor do they fit within any other exception to which we have been cited. Therefore, the Item IV and V bequests will abate ratably with other demonstrative and specific legacies.

4. The next question concerns how the income earned on the municipal bonds used to fund the Item II, IV, and V bequests is distributable with these bequests.

"The income, profit, or increase of specific legacies, as a general rule, goes with the legacy, though the time of enjoyment or of vesting may be postponed." Code § 113-809. *Beal v. Crafton,* 5 Ga. 301 (3) (1848); *Graybill v. Warren,* 4 Ga. 528 (1) (1848). "A general legacy usually bears interest after the expiration of 12 months from the death of the testator. But when the condition of the estate at that time, as to the payment of debts and legacies, is doubtful, or the fund out of which the legacy is to be paid is unavailable for all the charges made upon it, or any other equitable circumstance intervenes, the general rule yields to the equity and necessity of the particular case. A general legacy to be paid at a future time or upon a future event bears no interest until such time or event." Code § 113-810. If the testator fixes by his will the date on which a general legacy is to be paid, it bears interest from that date. *Graybill v. Warren,* 4 Ga. 528, supra. *Graybill* does recognize an exception to the usual rules as to when general and specific legacies begin to bear interest or pay income. Under the exception recognized in *Graybill,* if the testator is a parent of an infant legatee, or is *in loco parentis,* the legacy bears interest from the death of the testator, whether the time of payment is

postponed or not, unless there is another provision in the will for maintenance of the child. However, none of the Item II, IV, or V bequests falls within the exception recognized in *Graybill.*

We hold that the Item II bequest is payable 60 days after the testator's death, and, therefore, the beneficiary of the Item II bequest is entitled to the income earned on the bonds used to fund this bequest from that date. The Item IV bequest is payable 30 days from the date of the testator's death, and, therefore, the beneficiary of the Item IV bequest is entitled to the income earned on the bonds used to fund this bequest beginning 30 days after the testator's death.

The superior court ruled that, as a matter of discretion, the executrices should have funded the Item V bequest within 60 days of the testator's death and, therefore, that the beneficiaries of the Item V bequest are entitled to the income earned on the bonds used to fund that bequest beginning 60 days after the testator's death. Since no one complains of this ruling on appeal, we do not review it.

We agree with the superior court that the beneficiaries of the Item II, IV and V bequests are entitled to interest on the income generated by these bequests after the bequests became payable, as directed in the will, but before the income from the bequests was actually delivered to the beneficiaries. We do not disagree that compound interest on pecuniary legacies is not generally allowable. See 97 CJS 278, Wills, § 1361. However, we do hold that where, as here, the testator makes a gift of the income on the legacy, and neither the legacy nor the income therefrom is delivered to the beneficiary within the time limits specified in the will, in order to be made whole, the beneficiary is entitled to interest on the income during the period the beneficiary should have been, but was not, receiving such income.

5. The final question is whether the superior court was authorized to award attorney fees to the beneficiaries of the Item II, IV, and V bequests, as well as the Item IV and V trustee. We conclude that although attorney fees were properly awarded to the Item II beneficiary, there is no basis for an award of attorney fees to the Item IV and V beneficiaries and the trustee.

It is true that there are bona fide questions in this case as to how the Item II, IV, and V bequests are to be funded. And, it is also true that there is a shortfall in the residuary estate such that the assets thereof are insufficient to pay taxes, debts, and expenses of administration. For this latter reason, it became necessary to resolve bona fide questions concerning the order of abatement of various bequests in the will. Prior to a judicial resolution of the executrices' petition for construction, it was entirely possible that the Item IV and V bequests might be among the first bequests to abate. Consequently, it cannot be said that the executrices abused their

discretion in failing to fund the Item IV and V bequests within the time limits specified in the will.

However, it is undisputed that the Item II bequest to the widow has a preferred status in the order of abatement, and this bequest will abate, if at all, only after other assets of the estate have been exhausted. Nonetheless, the executrices argue that under Code Ann §§ 113-1505 and 113-2201, they had six months from the date of their qualification to ascertain the condition of the estate prior to funding the Item II bequest notwithstanding instructions in the will to fund this bequest earlier. In addition, the executrices argue that if they had funded the Item II bequest within 60 days of the testator's death, as directed in the will, they could have incurred personal liability for the payment of federal estate and income taxes, as well as other claims of creditors, if the other assets of the estate proved insufficient to pay these taxes and claims.

Under the facts present here, we cannot agree that the executrices could have incurred personal liability for the payment of estate and income taxes, as well as other claims of creditors, by funding the Item II bequest within the time limit specified in the will. Under the facts of this case, it is inconceivable that the Item II bequest to the widow would have to abate for the payment of federal income or estate taxes. And, if the other assets of the estate proved insufficient to pay the claims of creditors after the payment of these taxes, the executrices would not have incurred personal liability by funding the Item II bequest within 60 days of the testator's death. Although unpaid creditors might have a right of recovery against the widow, the executrices would not be subject to personal liability.

Therefore, we hold that the executrices could and should have delivered to the Item II beneficiary within the time limit specified in the will the municipal bonds to which she is unquestionably entitled, i.e., $600,000 in municipal bonds valued at face value. This the executrices failed to do; and, as previously stated, this required the Item II beneficiary to file a petition for accounting against the executrices in probate court, which petition was made the subject of a counterclaim in this action. In our opinion, this put the Item II beneficiary in the posture of a plaintiff on her counterclaim against the executrices. We hold that the trial court was authorized to award her attorney fees under Code § 20-1404 on the ground that the executrices had caused her unnecessary trouble and expense.

However, the Item IV and V beneficiaries, and the trustee, did not file petitions for accounting against the executrices. Therefore, they stand in the posture of defendants only, and it has been held that defendants cannot recover attorney fees against plaintiffs under Code § 20-1404. *King v. Pate,* 215 Ga. 593 (3) (112 SE2d 589) (1960);

*Pitman v. Dixie Ornamental Iron Co.,* 122 Ga. App. 404 (3) (177 SE2d 167) (1970). And, because of the unresolved abatement questions, it cannot be said that the executrices abused their discretion in failing to fund the Item IV and V bequests within the time limits specified in the will.

*Judgment affirmed in part and reversed in part. All the Justices concur, except Jordan, P. J., and Hill, J., who dissent to Division 2 (a) and Marshall, J., who dissents to Divisions 2 (a), 3 and 5.*

ARGUED JULY 7, 1980 — DECIDED
OCTOBER 9, 1980 —
REHEARINGS DENIED NOVEMBER 14, 1980.

*William Linkous, Jr., John T. Marshall, Frank S. McGaughey, III, Robert L. Connelly, Jr., Ronald W. Self,* for appellants (Case Nos. 36364, 36473).

*Max R. McGlamry, R. Lee Redmond, Jr., Charles H. Ford, Jr., Allen D. Altman, Timothy J. Sweeney, Forrest L. Champion, Jr., A. Kimbrough Davis, Aaron Cohn,* for appellees (Case Nos. 36364, 36473).

*Charles H. Ford, Jr., William L. Tucker,* for appellants (Case Nos. 36365, 36367, 36474).

*Robert L. Connelly, Jr., R. Lee Redmond, Jr., Allen D. Altman, Timothy J. Sweeney, Forrest L. Champion, Jr., A. Kimbrough Davis, Marcus B. Calhoun, Jr., Aaron Cohn, Max R. McGlamry,* for appellees (Case Nos. 36365, 36367).

*Timothy J. Sweeney,* for appellants (Case Nos. 36366, 36475).

*J. Norman Pease, Frank S. McGaughey, III, Marcus B. Calhoun, Jr., Robert L. Connelly, Jr., Max R. McGlamry, R. Lee Redmond, Jr., Charles H. Ford, Jr., Forrest L. Champion, Jr., A. Kimbrough Davis, Aaron Cohn,* for appellees (Case Nos. 36366, 36475).

*Max R. McGlamry, R. Lee Redmond, Jr., Frank S. McGaughey, III, Allen D. Altman, Timothy J. Sweeney, Forrest L. Champion, Jr., A. Kimbrough Davis, Aaron Cohn, Marcus B. Calhoun, Jr.,* for appellees (Case No. 36474).

HILL, Justice, concurring in part and dissenting in part.

I concur in Divisions 1, 2 (b), 3, 4 and 5 of the majority opinion. As for Division 2 (a), I agree with so much of Justice Marshall's dissent as points out that the testator intended the Item II bequest to be funded with bonds valued at face value the same as testator intended in the Item IV and V bequests.

I am authorized to state that Presiding Justice Jordan shares

these views.

MARSHALL, Justice, dissenting.

The questions involved in this complex will case are admittedly close. But, I do find myself in disagreement with several of the conclusions reached by the majority.

The only real basis for the majority's decision to fund the Item II bequests with bonds valued at fair market value, while funding the Item IV and V bequests with bonds valued at face value, is the fact that the testator used the word "sum" in the Item II bequest, as opposed to his use of the term "principal sum" in the Item IV and V bequests. In my opinion, if the testator had intended to fund the Item II, IV, and V bequests differently, he would have evinced such an intent in clearer terms.

I also disagree with the majority's classification of the Item III, IX, X, and XI stock bequests as specific. It must be remembered that in dealing with the terms general legacy, specific legacy, and demonstrative legacy, we are dealing with rather technical terms of art. A gift of a specified number of shares of stock or bonds in a particular company is, without more, considered to be a general legacy. See *Young v. Young,* 202 Ga. 694 (44 SE2d 659) (1947); *Bailes v. Halsey,* 179 Ga. 182 (175 SE 472) (1934). The reason for this is that shares of stock or bonds are essentially fungible, and they do not, therefore, possess the characteristic of uniqueness associated with a specific legacy. However, a stock or bond legacy can be made specific, if, for instance, the testator were to list the stocks or bonds by serial or stock certificate number. *Young v. Young,* supra. The gift of a given number of stocks or bonds in a specified company might also be made specific, if the testator qualified the bequest by limiting it to stocks or bonds he owned at the time the will was executed or at the time of his death. See *Chaffin,* The Time Gap in Wills: Shifting Assets and Shrinking Estates — Obsolescence and Testamentary Planning in Georgia, 6 Ga. L. Rev. 649, 651 (1972). Under the foregoing authorities, the Item II, IV, and V stock bequests should probably be classified as general. However, since the testator had stock in these companies in his estate at the time of his death sufficient to fund these bequests, I think it is manifest that the testator intended these bequests to be funded with the stock he owned, and, therefore, I would classify these bequests as demonstrative.

The effect of the majority's decision to classify the Item III, IX, X and XI stock bequests as specific — rather than general, as held by the trial court — means that the Item III, IX, X, and XI stock bequests will now abate along with, rather than before, the Item IV and V municipal bond bequests. As held by the majority, the Item II

bequest to the widow is not subject to abatement.

Finally, I would not cause a further dilution in the assets of the estate by awarding attorney fees to the Item II beneficiary.

Given the bona fide questions in this case concerning the order in which various of the bequests in the will are to abate and concerning how the Item II, IV, and V bequests are to be funded, the only feasible course open to the executrices was to file this petition for construction, which was done within six months from the grant of administration. See Code Ann. § 113-2201. There is no question that the various beneficiaries are in disagreement concerning how these ambiguities in the will are to be resolved, and this necessitated the filing of this petition for construction. Under these circumstances, *Alford v. C. & S. Nat. Bank,* 237 Ga. 194 (226 SE2d 905) (1976) dictates that the beneficiaries bear their own attorney fees.

I respectfully dissent to Divisions 2 (a), 3 and 5.